OPINION OF THE COURT
WlLMER J. PATLOW, J.
This article 78 proceeding challenges a ruling of the General Counsel of the New York State Department of Environmental Conservation (hereinafter "DEC”) that the Freshwater Wetlands Act (ECL art 24) is applicable to petitioners’ proposed regional shopping center development in the Town of Henrietta, New York.
Petitioners are the owners and developers of a proposed 125-acre shopping center now known as "The Marketplace”. The respondents are the DEC, as well as the commissioner and general counsel of that agency, and the City of Rochester, its City Manager and Corporation Counsel. South Town Plaza, Inc., the owner of property adjacent to the site of the proposed mall, is an intervenor-respondent in this proceeding.
In the early 1950’s, petitioners began formulating plans to develop a Henrietta airport site into a major commercial and industrial center, which was to include the proposed shopping mall. A number of actions were undertaken by petitioners and the local municipalities involved toward the final realization of the regional shopping mall. These actions culminated in the fall of 1974 with the petitioners’ application to the Town of Henrietta to have their property rezoned from industrial to commerical use.
On November 20, 1974, a public hearing was held in the Town of Henrietta with respect to the rezoning application. During the hearing testimony was received by the Town *521 Board from counsel for petitioners, professional consultants, and interested local citizens. The applicants submitted to the Town Board and incorporated in the public hearing record: (1) a site plan, (2) architectural drawings of the mail’s exterior, and (3) schematic drawings of the mall’s proposed interior.
The application for rezoning was further discussed at a regular meeting of the Henrietta Town Board held on December 4, 1974. At that time the board passed a comprehensive resolution which not only rezoned the property from industrial to commercial use, but also stated in its most pertinent part: "That the specific use of this land for a shopping mall is hereby approved without the need for further site plan approval”.
Thereafter, on August 1, 1975, chapter 614 of the Laws of 1975, the "Freshwater Wetlands Act” (ECL art 24) was enacted. In general, the act provides for the issuance of permits before projects can be undertaken in, or immediately adjacent to certain freshwater wetlands.
However, in 1976 an amendment to section 24-1305 of the act, "applicability” (commonly known as the "grandfather clause”) was enacted which exempts from coverage certain projects approved by the appropriate local authority prior to September 1, 1975, the effective date of the Freshwater Wetlands Act.
On or about May 12, 1978, the City of Rochester submitted to respondent Philip H. Gitlen, General Counsel of the Department of Environmental Conservation, a "Petition for Declaratory Ruling Under the Freshwater Wetlands Act”. The city requested a ruling on whether or not the provisions of the Freshwater Wetlands Act were applicable to the proposed project.
On June 13, 1978 Mr. Gitlen issued the subject declaratory ruling that the proposed project was not exempt from regulation under the Freshwater Wetlands Act by virtue of the "grandfather clause”, and therefore subject to the act’s requirements.
Petitioners now bring this article 78 proceeding seeking to annul and vacate that declaratory ruling.
At the threshold petitioners contest the city’s standing to petition the DEC for the declaratory ruling at issue.
Petitioners argue that the action taken by the city was ultra vires, absent a resolution by the City Council authorizing the *522 City Manager to file the petition. They contend that the declaratory ruling of respondent Gitlen is therefore invalid because it was made in response to the city’s illegal and unauthorized petition.
The city’s petition to DEC was filed pursuant to section 204 of the State Administrative Procedure Act as well as the DEC rules and regulations promulgated thereunder (6 NYCRR Part 619).
Section 204 of the State Administrative Procedure Act provides in pertinent part as follows: "On petition of any person, any agency may issue a declaratory ruling with respect to the applicability to any person, property, or state of facts of any rule or statute enforceable by it. * * * A declaratory ruling shall be binding upon the agency unless it is altered or set aside by a court” (emphasis supplied).
The DEC regulations contained in 6 NYCRR Part 619, relating to applications for declaratory rulings, provide in part:
"Section 619.1 Petition for declaratory ruling, (a) A person may petition the department for a declaratory ruling with respect to the applicability to any person, property or state of facts of any regulation or statute which the department enforces” (emphasis supplied).
"Section 619.2 Issuance of declaratory ruling. Within 30 days of the receipt of a complete petition for a declaratory ruling, the general counsel shall issue and mail to the petitioner such ruling” (emphasis supplied).
It is noteworthy that the DEC in promulgating department regulations neither qualified nor limited the broad State Administrative Procedure Act provision allowing "any person” to submit a petition for a declaratory ruling. Once the department receives such a petition, the regulations make it incumbent upon the general counsel to respond. There is neither a duty nor a directive that the DEC examine the capacity in which a petitioner has filed. It is sufficient that the DEC is put on notice that a declaratory ruling is requested.
Therefore it matters not whether the city’s act was ultra vires. The City Manager could have filed in an official or individual capacity as either would have sufficed to elicit the declaratory ruling at hand.
Thus, the threshold issue of standing must be resolved in favor of respondent City of Rochester.
*523 We now turn to the merits.
The primary issue before the court is the validity of the declaratory ruling that petitioners are not entitled to relief from the requirements of the Freshwater Wetlands Act by virtue of the "grandfather clause”.
To properly proceed we must first examine the "grandfather clause” itself, which reads as follows:
"§ 24-1305 — Applicability.
"The provisions of this article shall not apply to any land use, improvement or development for which final approval shall have been obtained prior to the effective date of this article from the local governmental authority or authorities having jurisdiction over such land use. As used in this section, the term ’final approval’ shall mean:
"(a) in the case of the subdivision of land, conditional approval of a final plat as the term is defined in section two hundred seventy-six of the town law, and approval as used in section 7-728 of the village law and section thirty-two of the general cities law;
"(b) in the case of a site plan not involving the subdivision of land, approval by the appropriate body or office of a city, village or town of the site plan; and
"(c) in those cases not covered by subdivision (a) or (b) above, the issuance of a building permit or other authorization for the commencement of the use, improvement or development for which such permit or authorization was issued or in those local goverments which do not require such permits or authorizations, the actual commencement of the use, improvement or development of the land” (emphasis supplied; added L 1976, ch 771, § 1).
The precise issue then to determine is whether petitioners secured "final approval” as defined in ECL § 24-1305 by virtue of the December 4, 1974 resolution of the Henrietta Town Board which provided in pertinent parts, the following:
"1. That the specific use of this land for a shopping mall is hereby approved without the need for further site plan approval, except as hereinafter enumerated, and that those areas designated on the developers’ plans as of the date of the public hearing, which are marked 'undeveloped’ or 'yet to be developed’ shall be subject to preliminary and final site plan approval by the Henrietta Planning Board in the manner presently required by the present Henrietta Planned Unit *524 Development Ordinance. Among other matters deemed to be pertinent by the Planning Board, particular effort shall be directed toward securing realistic means of vehicular and pedestrian ingress and egress to the subject site from contiguous lands so as to provide coordination of facility with such contiguous lands.
"2. That prior to construction of the mall, all provisions of the existing Drainage Ordinance of the Town of Henrietta shall be met, and detailed drainage plans shall be submitted to the Town Engineer for his review and approval, and, in addition thereto, all flood control measures presently in effect in the Town of Henrietta shall be met, but the developer shall be given the option of presenting his own flood control data to the Town Board for its review and approval.
"3. That the developer shall present to the Town Board for its review and approval detailed landscaping, lighting, sign and parking plans. Such parking and landscaping plans shall provide the minimum number of parking spaces which are economically feasible” (emphasis supplied).
Respondent Gitlen, attempting to resolve this issue, found the facts before him inapplicable to subdivision (a).
Turning to subdivision (b), he found the facts inapplicable, and/or insufficient to invoke that section.
Although the resolution makes mention of site plan approval with regard to the subject site, respondent Gitlen found that the Henrietta zoning ordinance provided for special use permits rather than site plans for commercial A sites. Thus, concluding that the Town Board could not approve that which was not authorized in the zoning ordinance, he dismissed the use of the words "site plan approval” as "the mere use of certain words”, and interpreted what the board labeled "site plan approval” as, in essence, a special use permit, inapplicable to subdivision (b).
However, he went on to decide that even if the board intended to grant site plan approval in a manner not contemplated by the town zoning ordinance, when measured against the requirements for site plans for projects in a planned unit development, petitioners’ site plan was preliminary and conditional and thus insufficient to invoke the provision relative to site plan approval contained in subdivision (b).
Having decided that the Henrietta Town Board granted a special use permit, which was governed by neither subdivision *525 (a) nor (b), he concluded that subdivision (c) was "dispositive”. However, he ultimately found the facts insufficient to meet the requirements of that section as well.
All parties to this proceeding, DEC included, correctly concede that respondent Gitlen’s emphasis on subdivision (c) as being dispositive, was misplaced.
This error alone could require vacation of the ruling.
However, inasmuch ás all parties now consider subdivision (b) , relative to site plans, solely applicable to the issue at bar, the court will consider whether or not respondent Gitlen’s determination with respect to that subdivision was arbitrary and capricious.
The critical phrase contained in the resolution and the one upon which this court must focus its attention is as follows: "1. That the specific use of this land for a shopping mall is hereby approved without the need for further site plan approval, except as hereinafter enumerated”.
Respondents, relying heavily on the "except” clause contend that approval was still pending for many vital matters, therefore making any site plan approval merely preliminary and conditional.
The court cannot agree.
Several of the items which needed further approval, such as landscaping, lighting, signs and parking plans were ministerial, rather than substantial, as the respondents urge.
Furthermore, the substantial matters for which approval was held in abeyance (i.e., drainage and flood control), were conditions precedent to the commencement of construction of the mall, rather than conditions precedent to site plan approval. (See section 2 of resolution.) It was only with respect to areas marked "undeveloped” or "yet to be developed”, which are excluded from the plan of development in dispute herein, for which preliminary and final site plan approval was still pending. (See section 1 of resolution.)
Mundane arguments of statutory application and interpretation aside, it is crucial to note, as respondent Gitlen correctly states, "[n]o cases involving the construction of ECL Section 24-1305 have arisen in the courts”.
Lacking judicial precedents, this court believes resolution of the issue requires consideration of the scope and purpose of the statute as appears from its legislative history, although *526 the departmental ruling makes no mention of, or reference to, such history.
At the time of the consideration of the enactment of the amendment, Assemblyman Gary A. Lee, chief proponent and sponsor of the bill, in his introductory memorandum stated,
"The Department of Environmental Conservation is presently misinterpreting the Freshwater Wetlands Law as authority to require its approval under the Act on any land development, improvement or use found to be in a wetland even if the particular development was already commenced prior to the effective date of the law. Thus, even those land development projects which would, as a matter of law, be determined to have perfected so called 'vested rights’ and had gone through whatever local regulations required to obtain approval, if any, from local authorities, are now being required to terminate any further work on the land and to seek permission under this legislation before continuing.
"This situation is clearly unjust and is placing a severe financial and economic burden upon the owner and/or developer of the land in question.” (NY Legis Ann, 1976, pp 212-213.)
Recognizing that it was "grossly unfair to prohibit the development of projects because owners and developers had not secured a permit which became necessary after they had secured all previously required legal authorization” (Budget Division memorandum, Bill Jacket, L 1976, ch 771) the Legislature amended the statute by enacting the "grandfather clause”.
Thus, the fundamental purpose of the act was to remedy the gross inequities inuring to owners and developers against whom the act was retroactively applied.
Bearing this fundamental purpose in mind, it is of utmost significance that after having submitted a site plan along with drawings of the mall’s proposed interior and exterior, petitioners were expressly told in 1974 that they need not obtain further site plan approval. The fair and reasonable inference to be drawn is that they received all the site plan approval necessary, and that such approval was final.
Respondent Gitlen, however, found that the absence of any requirement or procedure in the town zoning ordinance for site plan approval for shopping centers abrogated the granting of site plan approval to petitioners by the Town Board.
*527 Assuming, arguendo, that this was correct, it is nevertheless unfair and unreasonable to place the burden upon developers to question and scrutinize the authority with which a town board grants site plan approval.
Again, assuming arguendo, that the Town Board lacked statutory authority to grant shopping center site plan approval, there was no other town body or office with the authority to approve petitioners’ site. Thus, the petitioners had no alternative source of relief.
Therefore, contrary to respondent Gitlen’s position, that "mere use of certain words cannot serve to invoke the exceptions to the Freshwater Wetlands Act contained in ECL Section 24-1305”, the court finds petitioners acted properly in relying on the plain meaning of the words contained in the resolution.
The court does note that respondents have raised certain procedural arguments attacking the validity of the Town Board resolution.
These objections are, inter alia, that the lack of notice to the public that matters other than rezoning were to be discussed at the public hearing, deprived the Henrietta Town Board of jurisdiction to even consider a site plan for the proposed project and that since the Town of Henrietta acted by resolution rather than by ordinance, its action was null and void.
These, and other procedural arguments raised by respondents, must be summarily dismissed. Although they may have had some merit if presented in a timely proceeding brought against the Henrietta Town Board to attack the adoption of the resolution, they are inapposite to the proceedings at hand. At this late date, alleged procedural irregularities committed by the Henrietta Town Board in 1974 cannot be permitted to inure to the detriment of petitioners.
Of ultimate significance, is that application of the requirements of the Freshwater Wetlands Act to petitioners’ development, as mandated by the declaratory ruling and as urged by respondents, would be to misconstrue the very purpose for which the "grandfather clause” was enacted; namely to alleviate the gross unfairness of requiring that developers comply with the freshwater wetlands permit regulation which went into effect after they secured all previously required authorization. "[T]he law should be construed to effectuate its pur *528 pose” (Young v Toia, 66 AD2d 377, 379, citing Kokoszka v Belford, 417 US 642, 650).
These developers in 1974 clearly perfected all the so-called "vested rights” contemplated by Assemblyman Lee when he recommended passage of the "grandfather clause”. Consequently, they are entitled to its protection.
Based upon all of the foregoing, the court finds that the declaratory ruling that petitioners’ project is subject to the regulatory requirements of the Freshwater Wetlands Act is arbitrary and capricious.
Therefore, the declaratory ruling is hereby annulled.