Titone, J.
(dissenting). Since one of Genesee’s permits required Genesee "to fill excavation areas in [the] future”, I believe defendant’s backfilling activities obtained "final approval” within the meaning of ECL 24-1305. Therefore, Gene-see’s backfilling activities are exempt from the Freshwater Wetlands Act and, accordingly, I would reverse the order of the County Court and dismiss the charges against defendant.
The Freshwater Wetlands Act (ECL art 24) (the Act) became effective on September 1, 1975, and was enacted to protect and conserve freshwater wetlands. Less than a year later, the Legislature added ECL 24-1305 in order to ameliorate the stringent requirements of the Act as applied to preexisting nonconforming uses. This "grandfather clause” provides that, "[t]he provisions of [the Act] shall not apply to any land use, improvement or development for which final approval shall have been obtained prior to the effective date of [the Act] from the local governmental authority or authorities having jurisdiction over such land use” (ECL 24-1305).
The legislative intent of the "grandfather clause” is clear. It was designed to remedy the gross inequity and severe hardship incurred by owners and developers whose previously authorized and commenced projects suddenly became subject to the requirements of the Act (see, Mem of Assemblyman Lee, 1976 NY Legis Ann, at 212-213; Budget Div Mem, Bill Jacket, L 1976, ch 771; Department of Environmental Conservation Mem, Bill Jacket, L 1976, ch 771). Prior to the enactment of the "grandfather clause”, such individuals were forced to stop their projects, and seek a permit from the Department of Environmental Conservation (see, ECL 24-0701 [1]). Through the enactment of ECL 24-1305, the Legislature has unequivocally exempted from the Act any land use that received final approval from the appropriate local government body prior to September 1, 1975 (see, Matter of Miracle Mile Assocs. v *777 Department of Envtl. Conservation, 98 Misc 2d 519, affd 73 AD2d 807; Dwight Enters., DEC Declaratory Ruling 24-03 [1979]).
Against this backdrop, the sole inquiry is whether Genesee obtained "final approval” by the local government prior to the effective date of the Act. Final approval is defined to include, "the issuance of a building permit or other authorization for the commencement of the use, improvement or development for which such permit or authorization was issued” (ECL 24-1305 [c] [emphasis added]). Through a simple application of the statute to the facts, I believe it is beyond question that Genesee obtained "final approval”, "for the commencement of the use”, prior to the effective date of the Act.
It is undisputed that Genesee obtained three separate permits between 1962 and 1965 from the Town of Wheatland. These excavation permits constitute "final approval” because they authorized Genesee to commence mining for marl prior to the effective date of the Act. When the last permit technically expired on December 31, 1965, Genesee no longer had the authority to continue mining the land for marl. However, one of the permits specifically required Genesee to stockpile surplus spoils so that they could be "used to fill excavation areas in [the] future”. Thus continued backfilling was part of the authorized activity; the expiration date in the permit applied only to the authorization to excavate, not the subsequent reclamation of the land. Further as the language of the permit makes clear, the restoration of Genesee’s property after the expiration of the permit was not just permitted, but required. Therefore, Genesee’s "use”, for which "final approval” was obtained, included restoration of the land in the form of backfilling.
Further support that restoration is contemplated after the expiration of the permits is found in a provision of Wheat-land’s excavation ordinances, which are expressly incorporated into the terms of the permits. One of the ordinances provides that no excavation is to be made to "a depth which, after the expiration of the permit, cannot be leveled to provide adequate drainage over contiguous land and not allow a pool *778 of water to accumulate” (Code of Town of Wheatland § 4-4 [A] [2]; emphasis added). While the majority contrasts this paragraph with an inapplicable paragraph of the town ordinance pertaining to gravel pits (majority mem, at 775), they have ignored the fact that the ordinance also contemplates some kind of activity following the official expiration of the permits. In fact, the activity contemplated is the backfilling for which defendant is being prosecuted. Thus, even though the other two permits are silent on the question of backfilling, there is no reason to assume that Genesee could have excavated the land and then simply walked away leaving large cavities to collect rain water.
In the face of the clear mandate to backfill contained in one of the permits, the majority somehow concludes "[t]here is no provision * * * in the record before us that [excavation] permitees fill back the excavated areas” (majority mem, at 774). To support this view, the majority points to the fact that the town has never taken formal action to compel defendant to backfill. This argument misses the point for two reasons. First, the "grandfather clause” exempts activities which have been permitted by the local authority. The fact that a locality may not be affirmatively requiring the activity has no impact on whether "final approval” has been obtained. Second, the town has never taken formal action to curtail defendant’s operation. Actually, by all indications, the town was aware of the backfilling and approved of it. In fact, in 1978 and 1983, the town granted variances to allow construction on newly filled areas of Genesee’s land. Had the town not approved of Gene-see’s activities, it does not require a great leap of faith to believe that the variances would not have been granted.
The majority also believes defendant should not be allowed to backfill in perpetuity. Although this concern is laudable, the majority’s argument is misplaced. The "grandfather clause” on its face indicates no concern with how long it takes to complete a land use or development given final approval by a local government (see, Dwight Enters., DEC Declaratory Ruling 24-03, at 101 [1979]). Indeed, as stated previously, the "grandfather clause” simply requires that the town permits authorized Genesee to commence its mining prior to the effective date of the Act.
*779 Moreover, the majority has forgotten that the DEC, not the town, has brought this prosecution. The present criminal prosecution should not concern whether Genesee has violated town permits or local ordinances. Such an action, if one exists, should be brought by the Town of Wheatland. It was the town that granted Genesee the prior authorization .to excavate, and it should be the town that decides whether the backfilling is improper or untimely. While the DEC is empowered to monitor wetlands, the “grandfather clause” precludes DEC action in the face of “final approval”. Since Genesee obtained the permits prior to the Act, and one of the permits specifically required Genesee to backfill, Genesee is exempt from the Wetlands Act. That defendant might have sought an additional permit from the DEC (majority mem, at 775-776) is of no legal consequence since the “grandfather clause” does not require such action.
Finally, I am most concerned that the DEC has chosen a criminal prosecution to challenge Genesee’s activities which have been ongoing for more than 20 years. At the very least, a valid question exists concerning the application of the “grandfather clause” to Genesee’s activities. That being so, resolution of the singular legal question involved by subjecting defendant to the stigma of a criminal conviction instead of proceeding civilly or administratively hardly seems appropriate or fair.
For the foregoing reasons, I conclude that Genesee’s backfilling activities fall within the protection of the “grandfather clause”, and I would reverse the order of the County Court and dismiss the charges against defendant.
Chief Judge Wachtler and Judges Kaye, Alexander and Bellacosa concur; Judge Titone dissents and votes to reverse in an opinion in which Judges Simons and Hancock, Jr., concur.
Order affirmed in a memorandum.