**ATLANTIC RICHFIELD COMPANY,**
**Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 81–1–00046.**

United States Court of International Trade.

May 24, 1984.

---

William John Rathje and James D. Fraser, Los Angeles, Cal., for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, Intern. Trade Field Office, New York City, and Michael P. Maxwell, New York City, for defendant.

## Opinion and Order

RESTANI, Judge.

In this action, plaintiff challenges the Customs Service's assessment of duty on Arconol, a blending component of motor gasoline. Plaintiff contends that Arconol was exempt from tariff duties at the time of entry under Presidential Proclamation 4655. Defendant contends that the proclamation did not suspend duties on Arconol. The parties agree that the application of the proclamation to Arconol is the only issue in this case.[1]

President Carter issued Proclamation 4655 in response to the energy crisis of 1979 when oil and certain petroleum products including motor gasoline were in short supply.[2] The proclamation temporarily suspended import fees and tariffs on crude oil and certain related products in order to increase their supply and to moderate the impact of price increases.

■ While the proclamation was in force, plaintiff made seven entries of Arconol. Plaintiff contends that Section 3 of

---

**1.** In their briefs and at argument the parties discussed at length the proper classification of Arconol under the Tariff Schedules. The classification of Arconol is only relevant to the extent it sheds light on the proper interpretation of the Proclamation. The duty rate is the same under all claimed classifications.

**2.** The proclamation reads in relevant part:

The Secretary of Energy has advised me that the continuation of shortages in international petroleum and petroleum product supplies has resulted in escalating world oil prices which impact directly on the United States economy. This situation requires that imports of crude oil and petroleum products be adjusted by temporarily suspending tariffs and the system of license fees which have been imposed since 1973 under Proclamation No. 3279, as amended. In light of the current market shortages and price conditions the continued imposition of import fees and tariffs, at least for the near term, do not serve the purposes of the Mandatory Oil Import Program and are detrimental to the economy. As a consequence, for the period that the shortages persist, continued imposition of the tariffs and import fees has become unnecessary and burdensome to the American public.

Therefore, the Secretary of Energy has recommended that I temporarily suspend imposition of the import fees and tariffs. Suspension of the fees and tariffs will serve to alleviate some of the world oil price impacts on the American consumer and should also improve access to certain refined products which are threatened to be in short supply. I agree with the changes proposed by the Secretary and they are consistent with the purposes of Proclamation 3279, as amended..... This action will adjust the imports of petroleum and petroleum product supplies so that they are not imported in such quantities or under such circumstances as to threaten to impair the national security.

NOW, THEREFORE, I, JIMMY CARTER, President of the United States of America, by the authority vested in me by the Constitution and the laws of the United States, including Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862), do hereby proclaim that:

SECTION 1. Section 3(a)(1) of Proclamation No. 3279, as amended, is further amended ... to read as follows:

\* \* \* \* \* \*

"(ii) with respect to imports of motor gasoline, unfinished oils, and all other finished products ... such fees shall be $0.00 per barrel for the period April 1, 1979 through June 30, 1979."

\* \* \* \* \* \*

SECTION 3. Effective as of April 1, 1979, tariffs upon imports of petroleum and petroleum products listed in Schedule 4, Part 10—"Petroleum, natural gas and products derived therefrom," and tariffs upon imports of hydrocarbons listed in Schedule 4, Part 2—"Chemical Elements, Inorganic and Organic Compounds, and Mixtures," of the Tariff Schedules of the United States shall be and are suspended until July 1, 1979 .... (Citation omitted)

the proclamation exempted these entries from duty because Arconol is classifiable under Schedule 4, Part 2 of the Tariff Schedules and is a hydrocarbon for the purposes of the proclamation.[3] Defendant agrees that Arconol is classifiable under Schedule 4, Part 2 but contends that Arconol is not a hydrocarbon and thus not exempt from duty. Defendant contends that under Section 3 both requirements must be met in order for Arconol to be exempt from duty.

■ In construing the proclamation, it is the court's duty to give effect to the President's intent. *See United States v. Siemens America, Inc.*, 68 CCPA 62, 653 F.2d 471 (1981), *cert. denied* 454 U.S. 1150, 102 S.Ct. 1016, 71 L.Ed.2d 304 (1982). Here the language of the proclamation is the principal source for determining the President's intent. Section 3 of the proclamation directly governs the scope of the proclamation's tariff suspension. Pursuant to Section 3 of the proclamation the only items listed in Schedule 4, Part 2 as to which tariffs are suspended are hydrocarbons.

The parties agree that a hydrocarbon is a molecule containing only carbon and hydrogen atoms. Arconol consists almost exclusively of tertiary butyl alcohol.[4] Tertiary butyl alcohol, the parties agree, is not a hydrocarbon. It is an oxygenated hydrocarbon due to the presence of oxygen in its chemical structure.[5]

Plaintiff properly points out that the butane in Arconol cannot be ignored for classification purposes. Butane is a hydrocarbon. Though Arconol contains only 3% butane, the parties have stipulated that the butane serves an important purpose in enabling Arconol to meet its product specifications. Thus in characterizing Arconol

for tariff purposes it may be proper to say that it consists in part of hydrocarbons. *See United States v. Cavalier Shipping Co., Inc.*, 60 CCPA 152, 478 F.2d 1256 (1973).

But it is a long leap from saying that a substance consists in part of hydrocarbons to saying the substance is a hydrocarbon. The language of Section 3 clearly indicates an intent to suspend tariffs from imports of hydrocarbons in Schedule 4, Part 2. The suspension is narrowly phrased, and the primary ingredient of Arconol does not fit within the provision.

■ Plaintiff contends that the proclamation as a whole requires a broad reading of the term hydrocarbon so as to include Arconol within that term. Plaintiff correctly points out that the court must interpret the tariff provisions in Section 3 in light of the proclamation as a whole and the purposes underlying it in order to carry out the President's intent. *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), *United States v. Yoshida International, Inc.*, 63 CCPA 15, 526 F.2d 560 (1975). Plaintiff contends that the proclamation as a whole reveals that the President intended to suspend import barriers on crude oil and all petroleum products useful in making motor fuels. Plaintiff contends that the President used the term hydrocarbon in Section 3 as a short hand for hydrocarbons and all petroleum products useful in making motor fuels, or at least all petroleum products containing hydrocarbons that are used in making motor fuels. Defendant generally agrees that the purpose of the proclamation was to suspend import barriers on crude oil and certain petroleum products. But defendant

---

**3.** In its summons plaintiff also contended that Arconol could be classified under Schedule 4, Part 10. Plaintiff has since abandoned this contention. The parties have stipulated as to all material facts and have submitted the case for decision as to the proper application of the proclamation.

**4.** The parties have stipulated that the typical composition of Arconol is:

| Tertiary butyl alcohol | 95% |
|---|---|
| Butane | 3% |
| Acetone | |
| Water | 2% |
| Other | |

**5.** At oral argument, plaintiff suggested that Arconol would be considered a hydrocarbon within the petroleum industry. This factual contention is outside the stipulation of the parties that serves as the basis for this court's judgment.

contends that the President carefully defined and limited the scope of the import relief to certain specific products. Defendant contends that Arconol does not fit within the literal wording of the tariff provisions in Section 3 and that there is no justification for reading Section 3 differently from its literal wording.

Plaintiff's argument relies heavily on the application of the preamble of the proclamation to the operative provisions in Sections 1 and 3. The preamble states in general terms that the President issued the proclamation to respond to a continued shortage "in international petroleum and petroleum product supplies." Proclamation 4655, 44 Fed.Reg. 21243 (1979). The President decided that "[t]his situation requires that imports of crude oil and petroleum products be adjusted by temporarily suspending tariffs and the system of license fees which have been imposed since 1973 under Proclamation No. 3279 as amended" (citation omitted).[6] *Id.* Plaintiff would have the court draw three conclusions from the preamble. First, the operative provisions of the proclamation should be construed broadly to effectuate the stated purpose of the proclamation. Second, the tariff suspending provision in Section 3 should apply to all petroleum products since the preamble indicates a specific intent to increase imports of petroleum products. And finally, the proclamation indicates that tariffs and license fees were to be suspended from the same products so any product as to which fees were suspended would also be free of tariffs.

▇ Plaintiff is correct in noting that the preamble is highly relevant in determining the underlying purposes of the proclamation. A proclamation has no legislative history, so the preamble is the only material available to the court to describe the decision-making process behind the operative provisions. But the preamble does not directly modify the operative provisions of the proclamation.

[I]t is not an operative part of the statute and it does not enlarge or confer powers on administrative agencies or officers. Where the enacting or operative parts of a statute are unambiguous, the meaning of the statute cannot be controlled by language in the preamble. The operative provisions of statutes are those which prescribe rights and duties and otherwise declare the legislative will. (Citation omitted).

*Association of American Railroads v. Costle,* 562 F.2d 1310, 1316 (D.C.Cir.1977), *cf. United States v. Murray,* 5 CIT ——, 561 F.Supp. 448, 456 (1983).

The preamble does indicate that the President intended to take substantial steps to increase imports of crude oil and petroleum products used in fuels. The preamble however does not define the precise steps which the President took. Plaintiff contends that the broad statement of intent in the preamble requires that the operative provisions be read broadly to give full effect to the President's intent, *citing Mobil Oil Corp. v. Federal Energy Administration,* 566 F.2d 87 (TECA 1977).

In *Mobil,* the court addressed the issue of the jurisdiction granted the Federal Energy Administration (FEA) under the Emergency Petroleum Allocation Act. The FEA had issued regulations governing allocation of liquids condensed from natural gas. The act's terms did not clearly indicate whether the FEA had jurisdiction to regulate products derived from natural gas. The court construed the act's jurisdictional grant broadly because the act as a whole indicated that Congress intended to give the FEA broad flexibility in shaping a regulatory scheme, *id.* at 95–96, and because the act would be ineffective if the natural gas liquids were not regulated. The act explicitly granted the FEA authority to regulate certain end products of the petroleum industry and "regulation of the end products would be unsuccessful with-

---

**6.** President Nixon imposed the license fee system in 1973 to begin regulating imports of crude oil and certain related products by an import fee system rather than a quota system. Proclamation 4210, 38 Fed.Reg. 9645 (1973).

out regulation of the raw materials." *Id.* at 97.

■ The proclamation at issue differs sharply from the act discussed in *Mobil.* The proclamation's operative provisions make a few, narrowly drawn revisions to the trade laws; they do not create a broad regulatory scheme. Since the President defined the proclamation's scope so narrowly, it is unlikely that he intended items not expressly mentioned in the operative provisions to be affected. *See* Posner *Statutory Interpretation,* 50 U.Chi.L.Rev. 800, 818 (1983). Also, suspending tariffs on Arconol is not necessary to make the proclamation effective. The proclamation still serves its underlying purpose of stimulating energy imports even if not every energy import is increased. At best plaintiff can argue that the proclamation would have been more effective if Arconol had been included in the tariff suspension. This may be so. But it is not the place of the court to "improve" on the President's work by increasing the scope of a narrowly drawn proclamation.

Plaintiff's contention that the preamble indicates that, as used in the proclamation, the term hydrocarbon includes all petroleum products containing hydrocarbons also fails. The preamble does show that the President intended to suspend import barriers on petroleum products. But the preamble does not explicitly state an intent to suspend all import barriers on all petroleum products. The preamble, read in isolation, could support such a construction. But this reading conflicts with the express language of Section 3 which contains the tariff suspension. Section 3 limits the suspension of tariffs in Schedule 4, Part 2 to hydrocarbons, not to petroleum products.[7] A more reasonable construction of the preamble is that it shows the President's intent to suspend tariffs on some petroleum products with Section 3 left to define the scope of the suspension. This reading

is preferable because it does not create an internal inconsistency in the proclamation. And as noted above, plaintiff's construction of the preamble cannot modify "[t]he [unambiguous] operative provisions ... which prescribe rights and duties and otherwise declare the legislative will." *Association of American Railroads v. Costle,* 562 F.2d at 1316.

Finally, plaintiff contends that the preamble demonstrates the President's intent to suspend tariffs and import fees from the same items. Assuming, *arguendo,* that the proclamation suspended import fees from Arconol, this contention fails for the same reasons as discussed above. Plaintiff's construction of the preamble is a permissible one. But it is more reasonable to read the preamble as showing a general intent to suspend import fees from some items and tariffs from some items. Plaintiff's reading creates an inconsistency between the preamble and the operative provisions of the proclamation. Section 1 of the proclamation suspends import fees from "imports of motor gasoline, unfinished oils, and all other finished products." Presidential Proclamation 4655.[8] If the President intended Section 1 to affect exactly the same items as does Section 3, he would not have used such different terms to define the scope of the sections. If the President had intended to suspend tariffs from all finished products covered by Section 1, he would have said so. Instead, he limited the suspension of tariffs by the terms of Section 3. The language in the preamble cannot modify this unambiguous limit on the tariff suspension.

■ In sum, Arconol fails to fit within the plain language of the tariff suspension in Section 3 of the proclamation. The plain language of the proclamation must prevail in the absence of a clearly demonstrated intent to the contrary. *Luggage and Leather Goods Manufactures of America*

---

7. The court cannot assume the President intended the terms to be used interchangeably. It is well established that not all petroleum products are hydrocarbons. *See United States v. Esso*

*Standard Oil Co.,* 42 C.C.P.A. 144, 155–156 (1955).

8. Plaintiff contends that Arconol is a finished product for the purposes of the proclamation.

*v. United States*, 7 C.I.T. ——, —— - —— at ——, Slip Op. 84–53 at 25 (May 11, 1984). Plaintiff has failed to show that the President intended to include Arconol within the suspension.

Therefore, it is ORDERED: Judgment is granted for defendant in this action.