**ATLANTIC RICHFIELD COMPANY, Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 84–1413.**

United States Court of Appeals, Federal Circuit.

June 3, 1985.

William J. Rathje, Los Angeles, Cal., argued, for appellant.

Michael P. Maxwell, Commercial Litigation Branch, Dept. of Justice, New York City, argued, for appellee. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, New York City.

Before KASHIWA, Circuit Judge, COWEN, Senior Circuit Judge, and SMITH, Circuit Judge.

EDWARD S. SMITH, Circuit Judge.

In this tariff case, the United States Court of International Trade upheld the Customs Service's assessment of duty and granted judgment on the merits against appellant Atlantic Richfield Company (Arco), who had sought a determination that its imported product, Arconol, was exempt from tariffs set by the Tariff Schedules of the United States (TSUS) under Presidential Proclamation No. 4655.[1] We affirm.

## Issues

The first issue before this court is whether the lower court erred, as a matter of law, in holding that Arconol is not a hydrocarbon classified under TSUS schedule 4, part 2, and therefore not exempt from duty under the proclamation. The second issue is whether the Court of International Trade erred by ruling that the proclamation did not exempt Arconol from tariffs along with the petroleum products classifiable under section 4, part 10, of the TSUS. The final issue is whether the trial court erred in holding that the proclamation suspended import license fees for "finished products" such as Arconol, but did not suspend tariffs on those products.

## Background

In 1959, President Eisenhower issued Presidential Proclamation No. 3279 that mandated a system for granting licenses to import oil and petroleum products under the Mandatory Oil Import Program (MOIP).[2] In 1973, President Nixon suspended the then-existing tariffs on imported petroleum and petroleum products outlined by the TSUS, but implemented fees for the petroleum import licenses required under MOIP by issuing Presidential Proclamation No. 4210.[3] President Ford restored the tariffs in Proclamation No. 4341.[4] In 1979, President Carter issued Proclamation No. 4655[5] (the proclamation) whose interpretation is in issue here. The proclamation suspended the MOIP license fees and the tariffs for particular items classified in the TSUS from April 1, 1979, through January 1, 1980. During that time, Arco im-

1. *Atlantic Richfield Co. v. United States,* 588 F.Supp. 1427 (Ct.Int'l Trade 1984).

2. Proclamation No. 3279, 3 C.F.R. 11 (1959–63 Comp.).

3. Proclamation No. 4210, 3 C.F.R. 31 (1974).

4. Proclamation No. 4341, 3A C.F.R. 2 (1975 Comp.).

5. Proclamation No. 4655, 3 C.F.R. 31 (1980).

ported seven shiploads of Arconol,[6] a blending component used to make motor gasoline, and paid duties on the imported Arconol under protest. In the subsequent lawsuit to recover the duties paid, the United States Court of International Trade held that Arconol was not one of the products exempt from tariffs under the proclamation. The instant appeal followed.[7]

## Opinion

### A. *Operative Provisions of the Proclamation*

■ The parties stipulated that Arconol is classified under item 430.00, TSUS, as "mixtures of two or more organic compounds."[8] The proclamation exempts from duty items classified under TSUS section 4, part 2, only if they are hydrocarbons. The proclamation states:[9]

[T]ariffs upon imports of petroleum and petroleum products listed in Schedule 4, Part 10—"Petroleum, natural gas and products derived therefrom," and tariffs upon imports of hydocarbons [*sic*] listed in Schedule 4, Part 2—"Chemical Elements, Inorganic and Organic Compounds, and Mixtures", of the Tariff Schedules of the United States shall be and are suspended * * *.

Although Arconol may be *in part* of hydrocarbons, it is not a hydrocarbon. Because Arconol is 95 percent alcohol,[10] it cannot be a hydrocarbon. The Court of International Trade made no error in so ruling.

■ We now turn to Arco's contention that Arconol is exempt from tariffs as an imported petroleum product classified in schedule 4, part 10. Arconol cannot be included in "imports of petroleum and petroleum products listed in Schedule 4, Part 10" exempt from duty under the proclamation, because the parties have stipulated that Arconol is properly classifiable in schedule 4, part 2, and not in schedule 4, part 10.[11] The stipulation must control: we find no error in the lower court's decision that Arconol was not exempt from tariffs under the relevant section of the proclamation.

■ Arco argues that section 1 of the proclamation eliminates license fees and tariffs on "finished products." The relevant subparagraph of section 1 reads:[12]

(ii) with respect to imports of motor gasoline, unfinished oils, and all other finished products * * * over and above the levels of imports established in Section 2 of this Proclamation, such fees shall be $0.00 per barrel * * * [.]

We see no mention of tariffs in this subparagraph. This part of the proclamation suspends license fees only. Arco's argument on this issue must fail.

### B. *The Preamble*

None of the specific operative provisions of the proclamation suspends tariffs on Arconol, but Arco makes the ingenious argument that this court should effect the will of the executive as expressed in the proclamation's preamble. Arco relies on the following language in the proclamation's preamble to support its argument.[13]

The Secretary of Energy has advised me that the continuation of shortages in

---

**6.** The parties stipulated that Arconol is 95 percent tert-butyl alcohol, 3 percent butanes (hydrocarbons), and 2 percent acetone, water, and other impurities.

**7.** This court's jurisdiction over the instant appeal is based on 28 U.S.C. § 1295(a)(5) (1982).

**8.** TSUS, section 4, part 2, item 430.00 (1978). Appellant contends that Arconol is classifiable under item 430.10, and therefore exempt from tariffs under the proclamation. Item 430.10 includes "[m]ixtures that are in whole or in part of hydrocarbons derived in whole or in part from petroleum, shale oil, or natural gas." Although Arconol may be in part of hydrocarbons,

classification under item 430.10 does not mean that Arconol is a hydrocarbon, per se.

**9.** Proclamation No. 4655, 3 C.F.R. 31 (1980).

**10.** *See supra* note 6.

**11.** As such, the definition of Arconol under the Emergency Petroleum Allocation Act as a "refined petroleum product" is irrelevant to the case at bar.

**12.** Proclamation No. 4655, 3 C.F.R. 31 (1980).

**13.** *Id.*

international petroleum and petroleum product supplies has resulted in escalating world oil prices which impact directly on the United State [*sic*] economy. This situation requires that imports of crude oil and petroleum products be adjusted by temporarily suspending tariffs and the system of license fees which have been imposed since 1973 under Proclamation No. 3279 [footnote omitted], as amended. * * *

Therefore, the Secretary of Energy has recommended that I temporarily suspend imposition of the import fees and tariffs. Suspension of the fees and tariffs will serve to alleviate some of the world oil price impacts on the American consumer and should also improve access to certain refined products which are threatened to be in short supply. I agree with the changes proposed by the Secretary and they are consistent with the purposes of Proclamation No. 3279, as amended. * * *

Because President Carter agreed to "suspend imposition of the import fees and tariffs * * * to alleviate some of the world oil price impacts on the American consumer," Arco believes the President intended to suspend fees *and* tariffs for all products reached by any operative provision of the proclamation. Arco argues that President Carter's intent would be defeated by a contrary interpretation of the operative provisions of the proclamation.

■ We agree that this court should construe the proclamation to carry out the President's intent.[14] As is the case with a statute, however, the authoring authority's intent is best expressed in the operative provisions of the document, and specific operative provisions cannot be controlled by general expressions of intent in the document's preamble.[15] The District of Columbia Circuit expresses this rule in *Association of American Railroads* by writing "[w]here the enacting or operative parts of a statute are unambiguous, the meaning of the statute cannot be controlled by language in the preamble. The operative provisions of statutes are those which prescribe rights and duties and otherwise declare the legislative will."[16] The tail does not wag the dog. Arco's contention must fail.

### Conclusion

The operative provisions, not the preamble, of the proclamation control the outcome of this case. The Court of International Trade made no error in deciding that Arconol was not classifiable under TSUS section 4, part 10, and was not a hydrocarbon classifiable under TSUS section 4, part 2. Further, the lower court made no error in holding fees for import licenses, but not tariffs, were suspended for finished products by the proclamation. Because Arco has not shown any reversible error, we affirm.

AFFIRMED.

---

**14.** *Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974).

**15.** *Association of Am. R.Rs. v. Castle,* 562 F.2d 1310, 1316 (D.C.Cir.1977).

