## KOKOSZKA v. BELFORD, TRUSTEE IN BANKRUPTCY

No. 73-5265.  Argued April 22, 1974—Decided June 19, 1974

BURGER, C. J., delivered the opinion for a unanimous Court.

*Thomas R. Adams* argued the cause for petitioner. With him on the briefs were *Joanne S. Faulkner, Joseph Dean Garrison, Jr., Frederick W. Danforth, Jr., John T. Hansen,* and *Michael H. Weiss.*

*Benjamin R. Civiletti,* by invitation of the Court, 415 U. S. 956, argued the cause as *amicus curiae* in support of the judgment below. With him on the brief was *Harry D. Shapiro.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari in this case, 414 U. S. 1091 (1973), to resolve the conflict among the Courts of Ap-

peals on the questions of whether an income tax refund is "property" under § 70a (5) of the Bankruptcy Act [1] and whether, assuming that all or part of such tax refund is property which passes to the trustee, the Consumer Credit Protection Act's [2] limitation on wage garnishment serves to exempt 75% of the refund from the jurisdiction of the trustee.[3]

---

[1] The pertinent parts of § 70a (5) of the Bankruptcy Act, 11 U. S. C. § 110 (a) (5), read as follows:

"(a) The trustee of the estate of a bankrupt . . . shall . . . be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title . . . to all of the following kinds of property wherever located . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered . . . ."

It is undisputed that the refunds could have been transferred under Connecticut law at the time of the filing of the petition, cf. *Segal* v. *Rochelle,* 382 U. S. 375, 381–385 (1966).

[2] 82 Stat. 146, 15 U. S. C. § 1601 *et seq.*

[3] Title 15 U. S. C. § 1673 reads, in pertinent part:

"(a) Maximum allowable garnishment.

"Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

"(1) 25 per centum of his disposable earnings for that week, or

"(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206 (a) (1) of Title 29 in effect at the time the earnings are payable,

"whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

"(b) Exceptions.

"The restrictions of subsection (a) of this section do not apply in the case of

The petitioner was employed for the first three months of 1971. He was then unemployed from April 1971 until late in December of that year. He was re-employed for about the last week and a half of December 1971. While employed, petitioner claimed two exemptions for federal income tax purposes, the maximum number of deductions to which he was entitled, and his employer withheld the appropriate portion of his wages. 26 U. S. C. § 3402. During the year 1971, petitioner had a gross income of $2,322.

On January 5, 1972, petitioner filed a voluntary petition in bankruptcy. With the exception of a 1962 Corvair automobile which the trustee abandoned as an asset upon the bankrupt's payment of $25, the sole asset claimed by the trustee in bankruptcy was an income tax refund entitlement for $250.90. On February 3, 1972, the referee in bankruptcy entered an *ex parte* order directing petitioner to turn the refund over to the trustee upon its receipt. The bankrupt moved to vacate that order and, after a hearing, the referee denied the motion. In mid-February 1972, petitioner filed his income tax return for the calendar year 1971. Several weeks later, he received his refund check from the Internal Revenue Service. Upon its receipt, petitioner complied with the order of the trustee but filed a petition for review of the referee's decision in the United States District Court.[4] The District Court denied relief. Petitioner was granted

"(1) any order of any court for the support of any person.

"(2) any order of any court of bankruptcy under chapter XIII of the Bankruptcy Act.

"(3) any debt due for any State or Federal tax.

"(c) Execution or enforcement of garnishment order or process prohibited.

"No court of the United States or any State may make, execute, or enforce any order or process in violation of this section."

[4] 11 U. S. C. § 67 (c).

leave to appeal.[5]   On May 18, 1973, the United States Court of Appeals for the Second Circuit affirmed the order of the District Court, holding that the tax refund was property within the meaning of § 70a (5) of the Bankruptcy Act and that it therefore vested in the trustee. 479 F. 2d 990.   The court further held that the limitations on garnishment contained in the Consumer Credit Protection Act did not apply to bankruptcy situations and that, consequently, the trustee was entitled to the entire refund.   Petitioner seeks review of these questions here.

(1)

We turn first to the question of whether petitioner's income tax refund was "property" within the meaning of § 70a (5) of the Bankruptcy Act.   The term has never been given a precise or universal definition.   On an earlier occasion, in *Segal* v. *Rochelle,* 382 U. S. 375 (1966), the Court noted that " '[i]t is impossible to give any categorical definition to the word "property," nor can we attach to it in certain relations the limitations which would be attached to it in others.' "   *Id.,* at 379, quoting *Fisher* v. *Cushman,* 103 F. 860, 864 (CA1 1900).   In determining the term's scope—and its limitations—the purposes of the Bankruptcy Act "must ultimately govern."   382 U. S., at 379.   See also *Lines* v. *Frederick,* 400 U. S. 18 (1970); *Local Loan Co.* v. *Hunt,* 292 U. S. 234 (1934).

In applying these general considerations to the present situation, there are some guidelines.   In *Burlingham* v. *Crouse,* 228 U. S. 459 (1913), for example, the Court stated:

"It is the twofold purpose of the Bankruptcy Act to convert the estate of the bankrupt into cash and distribute it among creditors and then to give

---

[5] § 47 (a).

the bankrupt a fresh start with such exemptions and rights as the statute left untouched." *Id.,* at 473.

See also *Wetmore* v. *Markoe,* 196 U. S. 68, 77 (1904); *Williams* v. *U. S. Fidelity Co.,* 236 U. S. 549, 554–555 (1915); *Stellwagen* v. *Clum,* 245 U. S. 605, 617 (1918). On two rather recent occasions, the Court has applied these general principles to the precise statutory section and to the precise term at issue here. In *Segal* v. *Rochelle, supra,* the Court said:

> "The main thrust of § 70a (5) is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." 382 U. S., at 379.

At the same time, the Court noted that this construction must be tempered by the intent of Congress "to leave the bankrupt free after the date of his petition to accumulate new wealth in the future," *ibid.,* and thus "make an unencumbered fresh start," *id.,* at 380. Several years later, in *Lines* v. *Frederick, supra,* these same considerations were repeated in almost identical language. 400 U. S., at 19. *Segal* and *Lines,* while construing § 70a (5) in almost identical language, reached contrary results. In each case, the Court found the crucial analytical key, not in an abstract articulation of the statute's purpose, but in an analysis of the nature of the asset involved in light of those principles.

In *Segal, supra,* this Court held that a business-generated loss carryback tax refund—which was based on prebankruptcy losses but received after bankruptcy—

should pass to the trustee as § 70a (5) property. Balancing the dual purpose of the Bankruptcy Act, see *Burlingham* v. *Crouse, supra,* the Court concluded that the refund was "sufficiently rooted in the prebankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70a (5)," 382 U. S., at 380. The Court noted that "the very losses generating the refunds often help precipitate the bankruptcy and injury to the creditors," *id.,* at 378, and that passing the claim to the trustee did not impede a "fresh start." On the contrary, a bankrupt "without a refund claim to preserve has more reason to earn income rather than less." *Id.,* at 380.

In *Lines, supra,* on the other hand, the Court held that vacation pay, accrued prior to the date of filing and collectible either during the plant's annual shutdown for vacation or on the final termination of employment, does not pass to the trustee as § 70a (5) property. As in *Segal, supra,* the Court analyzed the nature of the asset in the light of the dual purposes of the Bankruptcy Act. It concluded that such vacation pay was closely tied to the bankrupt's opportunity to have a " 'clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' " 400 U. S., at 20, quoting *Local Loan Co.* v. *Hunt, supra,* at 244.

The income tax refund at issue in the present case does not relate conceptually to future wages and it is not the equivalent of future wages for the purpose of giving the bankrupt a "fresh start." The tax payments refunded here were income tax payments withheld from the petitioner prior to his filing for bankruptcy and are based on earnings prior to that filing. Relying on *Lines,* however, petitioner contends that the refund is necessary for a "fresh start" since it is solely derived from wages.

In *Lines,* we described wages as " 'a specialized type of property presenting distinct problems in our economic system' " [6] since they provide the basic means for the "economic survival of the debtor." 400 U. S., at 20.

Petitioner is correct in arguing that both this tax refund and the vacation pay in *Lines* share the common characteristic of being "wage based." It is also true, however, that only the vacation pay in *Lines* was designed to function as a wage substitute at some *future* period and, during that *future* period, to "support the basic requirements of life for [the debtors] and their families . . . ." *Ibid.* This distinction is crucial. As the Court of Appeals noted, since a "tax refund is not the weekly or other periodic income required by a wage earner for his basic support, to deprive him of it will not hinder his ability to make a *fresh* start unhampered by the pressure of preexisting debt," 479 F. 2d, at 995. "Just because some property interest had its source in wages . . . does not give it special protection, for to do so would exempt from the bankrupt estate most of the property owned by many bankrupts, such as savings accounts and automobiles which had their origin in wages." *Ibid.*

We conclude, therefore, that the Court of Appeals correctly held that the income tax refund is "sufficiently rooted in the prebankruptcy past" [7] to be defined as "property" under § 70a (5).

(2)

Our disposition of the first issue requires that we turn next to the petitioner's contention that 75% of the refund is exempt under the provisions of the Consumer

[6] 400 U. S. 18, 20, quoting *Sniadach* v. *Family Finance Corp.,* 395 U. S. 337, 340 (1969).

[7] *Segal* v. *Rochelle,* 382 U. S., at 380.

Credit Protection Act. The Act provides that no more than 25% of a person's aggregate disposable earnings [8] for any workweek or other pay period may be subject to garnishment. A trustee in bankruptcy takes title to the bankrupt's property "except insofar as it is to property which is held to be exempt . . . ." Bankruptcy Act, § 70a, 11 U. S. C. § 110 (a). Another section provides that the Act "shall not affect the allowance to bankrupts of the exemptions which are prescribed by the laws of the United States . . . ." Bankruptcy Act § 6, 11 U. S. C. § 24. Petitioner argues that the Consumer Credit Protection Act's restrictions on garnishment, 15 U. S. C. § 1671 *et seq.*, are such an exemption. In essence, the petitioner's position is that a tax refund, having its source in wages and being completely available to the taxpayer upon its return without any further deduction, is "disposable earnings" within the meaning of the statute. 15 U. S. C. § 1672 (b). He further argues that the taking of custody by the trustee is a "garnishment" since a bankruptcy proceeding is a "legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt." § 1672 (c).

---

[8] Title 15 U. S. C. § 1672, entitled "Definitions," states:

"For the purpose of this subchapter:

"(a) The term 'earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

"(b) The term 'disposable earnings' means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

"(c) The term 'garnishment' means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt."

The Congress did not enact the Consumer Credit Protection Act in a vacuum. The drafters of the statute were well aware that the provisions and the purposes of the Bankruptcy Act and the new legislation would have to coexist. Indeed, the Consumer Credit Protection Act explicitly rests on both the bankruptcy and commerce powers of the Congress. 15 U. S. C. § 1671 (b). We must therefore take into consideration the language and purpose of both the Bankruptcy Act and the Consumer Credit Protection Act in assessing the validity of the petitioner's argument. When "interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature . . . ." *Brown* v. *Duchesne,* 19 How. 183, 194 (1857).

An examination of the legislative history of the Consumer Protection Act makes it clear that, while it was enacted against the background of the Bankruptcy Act, it was not intended to alter the clear purpose of the latter Act to assemble, once a bankruptcy petition is filed, all of the debtor's assets for the benefit of his creditors. See, *e. g., Segal* v. *Rochelle,* 382 U. S. 375 (1966). Indeed, Congress' concern was not the *administration* of a bankrupt's estate but the *prevention* of bankruptcy in the first place by eliminating "an essential element in the predatory extension of credit resulting in a disruption of employment, production, as well as consumption" [9] and a consequent increase in personal bankruptcies. Noting that the evidence before the Committee "clearly established a causal connection between harsh

---

[9] H. R. Rep. No. 1040, 90th Cong., 1st Sess., 20 (1967).

garnishment laws and high levels of personal bankruptcies," [10] the House Report concluded:

> "The limitations on the garnishment of wages adopted by your committee, while permitting the continued orderly payment of consumer debts, will relieve countless honest debtors driven by economic desperation from plunging into bankruptcy in order to preserve their employment and insure a continued means of support for themselves and their families."

H. R. Rep. No. 1040, 90th Cong., 1st Sess., 21 (1967). See also *id.*, at 7. In short, the Consumer Credit Protection Act sought to prevent consumers from entering bankruptcy in the first place. However, if, despite its protection, bankruptcy did occur, the debtor's protection and remedy remained under the Bankruptcy Act.

The Court of Appeals held that the terms "earnings" and "disposable earnings," as used in 15 U. S. C. §§ 1672, 1673, did not include a tax refund, but were limited to "periodic payments of compensation and [do] not pertain to every asset that is traceable in some way to such compensation." 479 F. 2d, at 997. This view is fully supported by the legislative history. There is every indication that Congress, in an effort to avoid the necessity of bankruptcy, sought to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis. There is no indication, however, that Congress intended drastically to alter the delicate balance of a debtor's protections and obligations during the bankruptcy procedure.[11] We

---

[10] *Id.*, at 20–21.

[11] Petitioner argues that, since Chapter XIII of the Bankruptcy Act had been explicitly excluded from the scope of the Consumer Credit Protection Act (see 15 U. S. C. § 1673 (b)), it must have

therefore agree with the Court of Appeals that the Consumer Credit Protection Act does not restrict the right of the trustee to treat the income tax refund as property of the bankrupt's estate. Accordingly, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

---

intended to include the other portions of the Bankruptcy Act. Chapter XIII permits a wage earner to satisfy his creditors out of future income under a supervised plan. This particular procedure resembles the normal credit situation to which the CCPA is directed more than other bankruptcy situations and, for this reason, Congress might well have felt it necessary to ensure that the CCPA was not enforced at the expense of the bankruptcy procedures.