Veronica YUEN, Plaintiff-Appellant,

v.

INTERNAL REVENUE SERVICE, Gerome Kurtz, in his capacity as Commissioner of the Internal Revenue Service; John Imbesi, Joseph Tragna, H. Kramer and Carole Butler, in their official capacities as agents/employees of the Internal Revenue Service, Defendants-Appellees.

No. 858 Docket 80–6206.

United States Court of Appeals, Second Circuit.

Argued Feb. 18, 1981.

Decided May 21, 1981.

Bill Lan Lee, New York City (Margaret Fung, Stanley Mark, Stephen Gleit, O. Peter Sherwood, New York City, of counsel), for plaintiff-appellant.

Steven E. Obus, Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty., S. D. New York, Peter C. Salerno, Asst. U. S. Atty., New York City, of counsel), for defendants-appellees.

Before VAN GRAAFEILAND and KEARSE, Circuit Judges and STEWART,* District Judge.

KEARSE, Circuit Judge:

Plaintiff-appellant Veronica Yuen appeals from a final judgment of the United States District Court for the Southern District of New York, Leonard B. Sand, Judge, dismissing her complaint against the United States Internal Revenue Service ("IRS") and certain of its employees for denial of employment with IRS. IRS refused to employ Yuen on the ground that a statutory provision entitled "Citizenship requirement for federal employees compensated from appropriated funds," codified at 31 U.S.C. § 699b (Supp. III 1979) (hereinafter, together with its predecessor statutes, referred to as the "Appropriations Act" or the "Act"), prohibits employment by the federal government of persons other than United States citizens and certain groups of noncitizens that IRS contends do not include Yuen. Yuen contended that the proper construction of the Act does not, and could not constitutionally, exclude her from employment. The district court upheld IRS's interpretation of the Act and ruled that the Act, as construed, does not deprive Yuen of the equal protection of the law. We agree.

## BACKGROUND

The case involves the interpretation and constitutionality of 31 U.S.C. § 699b which, in effect, prohibits the federal government from employing in the continental United States any person

unless such person (1) is a citizen of the United States, (2) is a person in the service of the United States on September 29, 1979, who, being eligible for citizenship, has filed a declaration of intention to become a citizen of the United States prior to such date and is actually residing in the United States, (3) is a person who owes allegiance to the United States, (4) is an alien from Cuba, Poland, South Vietnam, or the Baltic countries lawfully admitted to the United States for permanent residence, or (5) South Vietnamese, Cambodian and Laotian refugees paroled into the United States between January 1, 1975, and September 29, 1979 .... [1]

---

1. 31 U.S.C. § 699b provides:
    Unless otherwise specified during the current fiscal year no part of any appropriation contained in this or any other Act shall be used to pay the compensation of any officer or employee of the Government of the United States (including any agency the majority of the stock of which is owned by the Government of the United States) whose post of duty is in continental United States unless such person [is in one of the five categories quoted in the text accompanying this footnote]: *Provided,* That for the purpose of this section, an affidavit signed by any such per-

The relevant facts were stipulated and are set forth in greater detail in the district court's opinion, reported at 497 F.Supp. 1023, familiarity with which is assumed. Briefly, Yuen is a Chinese citizen, permanently residing in the United States, who in April 1980 applied for employment with the IRS. IRS offered Yuen a position, and she accepted the offer on the same day, after terminating other employment. Later that day, IRS realized that Yuen was a citizen of China rather than the United States (a fact disclosed on her written application). Believing that § 699b barred its employment of Yuen, IRS promptly informed her that citizenship was required for the position she had sought (a fact not disclosed in IRS's solicitation of applications), and that she was therefore not to report for work with IRS.

Yuen commenced the present action, alleging breach of contract and violation of her rights to equal protection and due process. The complaint sought $10,000 in damages and an injunction compelling IRS to hire Yuen.

After commencing the action, Yuen executed an affidavit which stated as follows:

I, VERONICA YUEN, do solemnly swear (or affirm) that I will support [and] defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same. So help me God.

Yuen contends, and IRS disputes, that on the basis of this affidavit she "is a person who owes allegiance to the United States" within the meaning of category (3) of § 699b.[2] In support of her position, Yuen pointed to the opinion of the Supreme Court in *Hampton v. Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), in which, while ruling on the constitutionality of certain regulations of the United States Civil Service Commission ("CSC" or "Commission"), the Court stated as follows:

Congress has regularly provided for compensation of any federal employee owing allegiance to the United States. Since it is settled that aliens may take an appropriate oath of allegiance, the statutory category, though not precisely defined, is plainly more flexible and expansive than the Commission rule.

*Id.* at 109, 96 S.Ct. at 1908 (footnote omitted). Yuen argued that she was entitled to judgment on the basis of this language, plus the provision in § 699b that "for the purpose of this section, an affidavit signed by any such person shall be considered prima facie evidence that the requirements of this section with respect to his status have been complied with . . . ." Alternatively, she argued that if the statute were construed to bar her employment, it impermissibly distinguished among aliens on the basis of their nationalities, in violation of the Equal Protection Clause of the Constitution.

In an able opinion, Judge Sand granted summary judgment dismissing the complaint. He held, first, that the dicta in *Hampton* did not foreclose inquiry into the meaning of § 699b(3), 497 F.Supp. at 1028; second, that the language and legislative history of that section, reinforced by the history of similar language in other statutory provisions, led to the conclusion that the

son shall be considered prima facie evidence that the requirements of this section with respect to his status have been complied with: *Provided further*, That any person making a false affidavit shall be guilty of a felony, and, upon conviction, shall be fined not more than $4,000 or imprisoned for not more than one year, or both: *Provided further*, That the above penal-clause shall be in addition to, and not in substitution for any other provisions of existing law: *Provided further*, That any payment made to any officer or employee contrary to the provisions of this section shall be recoverable in action by the Federal Government. This section shall not apply to citizens of Israel, the Republic of the Philippines or to nationals of those countries allied with the United States in the current defense effort, or to temporary employment of translators, or to temporary employment in the field service (not to exceed sixty days) as a result of emergencies.

2. Finding that IRS would have refused to hire Yuen even if she had executed such an affidavit prior to the decision on her application, the district court properly declined to base its decision on the technical ground that Yuen apparently did not "owe [ ] allegiance" to the United States at the time she was rejected.

phrase "a person who owes allegiance to the United States" was intended to mean a noncitizen national of the United States rather than a nonnational alien who merely executes an affidavit, *id.* at 1035–36; and finally, that Congress's restriction on federal employment of aliens had a sufficient relationship to appropriate congressional concerns that it did not violate the Constitution, *id.* at 1040.

## DISCUSSION

We affirm principally on the basis of the district court's thorough opinion, which we adopt, and content ourselves here with a few observations.

### A. *Hampton v. Mow Sun Wong*

We agree with the district court that *Hampton v. Mow Sun Wong, supra,* did not definitively resolve the question presented here, and that the Supreme Court's observations with respect to the Appropriations Acts neither were nor were intended to be dispositive of the meaning of "owes allegiance."

In *Hampton,* several resident aliens challenged the constitutionality of a CSC regulation that permitted a civil service appointment only if the candidate was "a citizen of or owe[d] permanent allegiance to the United States." 5 C.F.R. § 338.101 (1976). After first concluding that the question before it was the validity of a CSC regulation rather than the validity of a statute,[3] 426 U.S. at 98–105, 96 S.Ct. 1903–1906, the Supreme Court sought to determine whether there had been Congressional approval or disapproval of CSC's citizenship/nationalism requirement. In so doing it reviewed the then-current and four prior Appropriations Acts, whose "owes allegiance" provisions are identical to category (3) of the current § 699b. The Court found that the limitations on federal employment provided

by Congress in the Acts gave rise to conflicting inferences as to whether or not the CSC rule was authorized:

> In the District Court respondents argued that the exemptions from the limitations included in the Appropriations Acts had become so broad by 1969 as to constitute a congressional determination of policy repudiating the narrow citizenship requirement in the Commission rule. Though not controlling, there is force to this argument. On the other hand, the fact that Congress repeatedly identified citizenship as one appropriate classification of persons eligible for compensation for federal service implies a continuing interest in giving preference, for reasons unrelated to the efficiency of the federal service, to citizens over aliens. In our judgment, however, that fact is less significant than the fact that Congress has consistently authorized payment to a much broader class of potential employees than the narrow category of citizens and natives of American Samoa eligible under the Commission rule. Congress has regularly provided for compensation of any federal employee owing allegiance to the United States. Since it is settled that aliens may take an appropriate oath of allegiance, [citing *In re Griffiths,* 413 U.S. 717, 726 n.18, 93 S.Ct. 2851, 2857, 37 L.Ed.2d 910 (1973)], the statutory category, though not precisely defined, is plainly more flexible and expansive than the Commission rule. Nevertheless, for present purposes we need merely conclude that the Appropriations Acts cannot fairly be construed to evidence either congressional approval or disapproval of the specific Commission rule challenged in this case.

*Id.* at 109–110, 96 S.Ct. at 1908.

▆ We agree with the district court's conclusion that the Supreme Court's discus-

---

**3.** The Court had granted certiorari on the question:

> Whether a regulation of the [CSC] that bars resident aliens from employment in the federal competitive civil service is constitutional.

426 U.S. at 98–99, 96 S.Ct. at 1903. The defendants had devoted their argument instead to

the proposition that the CSC regulation was "within the constitutional powers of Congress and the President and hence not a constitutionally forbidden discrimination against aliens." *Id.* at 99, 96 S.Ct. at 1903.

sion of the "owes allegiance" provision in the passage quoted above is not an authoritative construction necessary to the Court's determination of the validity of the CSC regulation. First, the Court did not purport to give a definitive interpretation of "owes allegiance"; rather, it stated that the statutory category of those owing allegiance was "not precisely defined." *Id.* at 109, 93 S.Ct. at 1908 (majority opinion); *id.* at 126, 93 S.Ct. at 1916 (Rehnquist, J., dissenting). Moreover, although Yuen argues that the discussion of "owes allegiance" was essential to the decision because the *Hampton* plaintiffs were not eligible for federal employment under any other category of the Appropriations Act, we note that the meaning of "owes allegiance" was not considered an issue by the parties. The plaintiffs in *Hampton* made no assertion that they qualified under the "owes allegiance" provision, 426 U.S. at 126, 96 S.Ct. at 1916 (Rehnquist, J., dissenting); and the Commission, for its part, did not assert that employment of the plaintiffs was barred by the Appropriations Act. The Appropriations Acts were not listed by the parties as relevant statutory provisions; and none of the briefs, including the three *amicus* briefs filed, argued the meaning of the phrase "owes allegiance." Finally, it is clear that the decision of the case did not turn on a construction of "owes allegiance" favorable to the plaintiffs, since only two of the plaintiffs executed affidavits stating that they owed allegiance, and the Court's judgment did not distinguish between the two who had done so, and those who had not. The CSC regulation was held invalid as to all of them, and the basis of the invalidity was not the Appropriations Acts: the Court had concluded that those Acts could not fairly be construed as either approval or disapproval of the CSC rule in issue.

Consequently, we concur that the Supreme Court's discussion of "owes allegiance" in *Hampton* was dictum, and that the district court was bound to make its own inquiry into the meaning of the language.

### B. *Congress's Intent*

We agree generally with the district court's analysis of the language and history of § 699b(3), and make the following observations.

Yuen relies in part on *Hampton* for the proposition that an affidavit such as she has executed here meets the statutory requirement for proof that she "owes allegiance" to the United States. In *Hampton*, the Court stated that "it is settled that aliens may take an appropriate oath of allegiance," 426 U.S. at 109, 96 S.Ct. at 1908, citing *In re Griffiths*, 413 U.S. 717, 726 n.18, 93 S.Ct. 2851, 2857, 37 L.Ed.2d 910 (1973), in which the Court had rejected the proposition that only a citizen could in good faith take an oath to support the Constitution, and had held that a state may not restrict an individual from practicing law on the basis of alienage. The proposition that an alien may in good faith take an appropriate oath of allegiance to the United States, however, does not compel the conclusion that Congress intended a conclusory oath to suffice to establish an alien as a person who "owes allegiance" to the United States, for purposes of federal employment. Thus, the language of *Hampton* and the ruling in *Griffiths* do not dispose of the question at issue here, which is not who may take an oath, but rather what Congress meant by "owes allegiance."

The intendment of category (3) must be assessed in light of Congress's overall purpose in enacting § 699b. *See Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974). Contrary to Yuen's suggestion that the "overall statutory purpose" of the Appropriations Act was to authorize federal employment of a much broader class of potential employees than citizens and other nationals, we agree with the district court's view that the *overall* purpose of the Act was restrictive.[4] As originally proposed, the Act would have

4. The district court did not err by testing this conclusion against analogous or related statutes since other statutes "not strictly *in pari* materia but employing similar language and applying to similar persons, things, or cognate relationships may control by force of analogy."

limited federal employment strictly to citizens. 83 Cong.Rec. 357, 713 (1938). Although that proposed exclusivity was relaxed, the tenor of the statute remains restrictive. The Act is phrased in negative terms: it provides that no federally appropriated moneys may be used to employ anyone who is not within the groups listed. The congressional debate with respect to the "owes allegiance" category evinced concern for only limited groups of aliens—most notably the Filipinos—who by virtue of their status, owed allegiance to the United States. And the subsequently added special categories of § 699b, apparently enacted in response to international political situations, have extended federal employability to aliens from only specified countries, such as Poland, Pub.L.No.87–125, 75 Stat. 268, 282 (1961); Cuba, Pub.L.No.93–143, 87 Stat. 510, 525 (1973); South Vietnam, Pub.L.No. 94–91, 89 Stat. 441, 458 (1975); and Cambodia and Laos, Pub.L.No.95–429, 92 Stat. 1001, 1015 (1978). Congressional debate surrounding certain of these special extensions reveals a belief that such extensions are the only means by which such an alien may obtain federal employment. Thus, in arguing in favor of the most recent exception for Cambodian and Laotian refugees, Congressman Steed stated that "[w]ithout this waiver, even though they do come in legally as refugees, they would not be allowed to work for the Federal Government." 124 Cong.Rec.H. 11439 (1978).

■ In short, we do not find support for the proposition that Congress intended to allow the mere execution of an affidavit promising allegiance to convert any and every alien into a person who "owes allegiance" to the United States within the meaning of § 699b.[5]

## C. The Constitutional Question

■ The district court ruled that § 699b, as interpreted to deny federal employment to aliens whose sole claim of employability under § 699b was the execution of an affidavit swearing allegiance, did not deny Yuen equal protection of the law because it sought to further appropriate congressional goals. Yuen argues that although the court correctly chose an "intermediate" standard of review of the propriety of Congress's classifications, it erred in its conclusions that the statute evinced proper congressional concerns. IRS, on the other hand, while approving the district court's conclusion, argues that only minimal judicial scrutiny of Congress's actions was appropriate and that § 699b must be upheld if it has any rational basis.

While there is contemporaneous support for both positions as to the standard of review, compare Hampton v. Mow Sun Wong, supra (because CSC regulation deprived aliens of a liberty interest, "some judicial scrutiny of the deprivation is mandated by the Constitution"), 426 U.S. at 103, 96 S.Ct. at 1903, with Mathews v. Diaz, 426 U.S. 67, 82, 83, 96 S.Ct. 1883, 1893, 48 L.Ed.2d 478 (1976) (under "narrow standard of review," Medicare benefit restrictions based on alienage were upheld where not "wholly irrational"), we see no need to decide which standard of review was required here. Even under the intermediate review used by the district court, we find no error in the conclusion that the statute furthers important governmental interests.

The judgment of the district court dismissing the complaint is affirmed. No costs.

---

Stribling v. United States, 419 F.2d 1350, 1352 (8th Cir. 1969).

5. Cf. Woodward v. Rogers, 344 F.Supp. 974, 984 (D.D.C.1972), aff'd, 486 F.2d 1317 (D.C.Cir. 1973) (table), construing the phrase "owing allegiance" in the passport law, 22 U.S.C. § 212:

The statutory test is whether one "owes" allegiance—that is, whether he is regarded by law as "owing" allegiance to the United States by virtue of his territorial residence and status. The statutory test is not whether one "gives" or promises his allegiance to the United States.