In re Thomas E. **ROBSON** and
Carolyn S. Robson.

Bankruptcy No. 91–42383S.

United States Bankruptcy Court,
E.D. Arkansas, W.D.

April 19, 1993.

Robert Bamburg, Jacksonville, AR, for Dewell & Janet Wages.

Randy Rice, Trustee.

Debtors, pro se.

### ORDER DENYING DISCHARGE

Mary D. SCOTT, Bankruptcy Judge.

Now before the Court are the files and records in this Chapter 7 proceeding.

## I. PROCEDURAL HISTORY

The voluntary Chapter 7 petition in bankruptcy was filed on September 20, 1991. On December 16, 1991, the creditors Dewell and Janet Wages filed a complaint objecting to discharge, 11 U.S.C. § 727, and dischargeability of a debt, 11 U.S.C. § 523(a), due to the fraudulent conduct of the debtors. The cause was called for trial on November 17, 1992, the creditors appearing with their attorney, Robert Bamburg. The debtors' attorney appeared and announced ready for trial; the debtors did not appear. The matter proceeded to hearing only on the dischargeability issue, in which the Wages assert that the debtors defrauded them of $4,000. The Court subsequently ruled that the debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (4). *Wages v. Robson (In re Robson)*, 148 B.R. 567 (Bankr.E.D.Ark. 1992).

The evidence during the dischargeability trial raised questions as to whether a discharge in Chapter 7 would constitute a substantial abuse of the Bankruptcy Code. Accordingly, on November 19, 1992, this Court entered an Order which directed the debtors to personally appear for examination by the Court pursuant to section 707(b) on January 12, 1993. In addition, the Court directed that the debtors bring with them certain financial records. On January 12, 1993, the Court called the matter for hearing. The debtors failed to appear. John Ogles, the debtors' counsel of record, appeared and indicated he had been unable to contact the debtors since May 1992.[1]

Upon the failure of the debtors to appear, and upon motion by the trustee, on January 27, 1993, the Court issued an Order instructing the United States Marshal to apprehend the debtors and bring them before the United States Bankruptcy Court, Eastern District of Arkansas. Thereafter, the U.S. Marshal advised the Court that the debtors moved from the district. The debtors have never advised the Court, as they are required to do under Rule 4002(5), of a new address.

On February 8, 1993, the Court issued an Order to Show Cause why their discharge should not be denied. Notice was delivered to the debtors' record address as well as the last address known to debtors' former counsel. Hearing on the Order to Show Cause was held on March 9, 1993, at which

---

1. By Order entered January 22, 1993, the Court permitted Mr. Ogles to withdraw as counsel of record.

time the Chapter 7 Trustee, Randy Rice, appeared and testified regarding his investigation of the debtors, and Deputy Marshal Lucian Bramel appeared and testified.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(J).

## II. FACTS

The debtors' schedules are fraudulently inaccurate. For example, the debtors list only one vehicle on their schedules. The debtors actually owned two vehicles. The schedules filed September 30, 1992, list only ownership of a 1991 Miata. The evidence revealed that the debtor, Carolyn Robson, owned at the time the petition was filed, and currently, a 1986 Pontiac Fiero GT. Robson apparently owned the vehicle from the time of her divorce from one Robert W. Williams (the vehicle title still includes the name Carolyn Williams), some time prior to October 1987.[2] She still had this vehicle as of the date of the petition as demonstrated by the following facts: Only seven days before the bankruptcy petition was filed, Carolyn Robson submitted her personal property tax assessment declaring ownership of the 1986 Pontiac Fiero. The vehicle records of the State of Arkansas also list her as owner when the registration was renewed in August 1992. Further, records at the apartment in which the Robsons lived during July and August 1992 indicate that the Robsons still possessed the Fiero. Accordingly, it is clear that Carolyn Robson owned the Fiero prior to the bankruptcy and retained that vehicle during the bankruptcy. However, the Robsons failed to declare this vehicle on their joint petition, filed September 30, 1991.

Secondly, the debtors failed to list certain household items, including a washer and dryer from Sears Roebuck & Co. Ownership is evidenced by the security interest filed by Sears in the property. While Sears claims an interest in this particular property, the debtors failed to either list this property or list a transfer of the property. In any event, it is now impossible for the trustee or any creditor to review what assets the Robsons actually may possess inasmuch as they have left the state of Arkansas with their possessions.

The debtors' Statement of Financial Affairs requires the debtor to list "all premises which the debtor occupied" during the two years prior to the filing of the petition. The debtors failed to list complete, accurate information. This is not surprising, however, in light of the evidence heard at trial. At each of the addresses checked by the U.S. Marshal, the Robsons left the premises owing rent and utilities. It appears that the debtors moved nearly every two to three months, apparently to avoid creditors, including the landlords and utility companies servicing each new address. The only exception appears to be a 207 Chestnut address. The 207 Chestnut address itself is fraudulent: there exists no such address.

The debtors' petition listed their current residential address as Framar Grove Apt. # 4E, Jacksonville, Arkansas, and a mailing address as P.O. Box 8263, Jacksonville, Arkansas. The schedules listed three prior residences as follows:

| | |
|---|---|
| Ridgeway Apts.<br>Jacksonville, AR 72076 | 2 mos. Mar. & Apr. |
| 516 S. Bailey<br>Jacksonville, AR 72076 | 3 mos. |
| 207 Chestnut<br>Jacksonville, AR 72076 | 3 mos. |

On its face, this listing is incomplete. The evidence at the hearing indicates it is fraudulent. While there are gaps in the complete listings of addresses, the evidence at trial demonstrated that the debtors actually lived at numerous addresses during the required reporting period, before and during the bankruptcy proceedings. The addresses located, together with gaps in information, demonstrate the debtors' pattern of living at a residence for a period of a few months after which they would abscond, leaving rent, telephone, gas, and electric bills unpaid. Indeed, it appears that they would alternate residences in var-

---

2. The Robsons married on October 1, 1987.

ious counties in the Little Rock area in order to obtain utilities. They would move from one county to another and enlist the local utility company, failing to disclose that they failed to pay the utility companies at their previous addresses. Of course, during much of this period of time, the debtors were protected by the automatic stay in bankruptcy.

While the Robsons appear to have incurred numerous bills during and prior to their bankruptcy case, there were in fact few pre-petition bills listed on their bankruptcy schedules. The primary purpose of the bankruptcy was to halt the state court debt proceedings instituted by Janet and Dewell Wages. All other creditors listed in the petition claimed only minor amounts or their debts were reaffirmed. Apparently, the debtors hoped to discharge the debt owed to the Wages. This debt was held to be nondischargeable, however, after the Court heard the evidence of debtors' fraud.

### III. CONCLUSIONS OF LAW

The actions of the debtors are clearly not those of honest debtors beset by unfortunate financial circumstances who are entitled to the protection of the Bankruptcy Code. A discharge in bankruptcy may be denied only for certain enumerated reasons. In this case, the debtors have managed to meet the requirements for several of the nondischarge provisions under section 727.

#### Failure to Appear

■ It has been held that the intentional failure of the debtors to appear at a discharge hearing is sufficient cause to deny discharge. *County Real Estate Corp v. Ishahak (Ishahak)*, 130 B.R. 16 (Bankr. E.D.N.Y.1991); *Morrison v. Howard (In re Howard)*, 55 B.R. 580 (Bankr.E.D.N.C. 1985). Based upon the circumstantial evidence of the debtors' movements, the continuing fraud being perpetrated upon creditors, violations of Orders and the direct violations of the duties imposed under Rule 4002, the Court finds that the debtors' failure to appear at the duly noticed objection to discharge hearing was intentional. Ac-

cordingly, the discharge will be denied for failure to appear at the hearing.

#### Failure to Obey Lawful Orders

■ The debtors have failed to obey lawful orders of this Court, 11 U.S.C. § 727(a)(6), by

(A) failing to appear as directed by the Court in the Order dated November 18, 1992;

(B) failing to produce books and records as directed by the Court in the Order dated November 18, 1992; and

(C) failing to appear as directed by the Court in the Order dated February 8, 1993.

In addition to the repeated and continuing refusal to obey Court Orders, the debtors fled the jurisdiction of this Court; directly violated Rule 4002(1) of the Federal Rules of Bankruptcy Procedure; directly violated Rule 4002(2) of the Federal Rules of Bankruptcy Procedure; directly violated Rule 4002(4) of the Federal Rules of Bankruptcy Procedure and directly violated Rule 4002(5) of the Federal Rules of Bankruptcy Procedure.

In determining whether a court should deny discharge under section 727(a)(6), a case under the Bankruptcy Act, *In re Kokoszka*, 479 F.2d 990 (2d Cir.1973), *aff'd* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374, *reh'g denied*, 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131 (1974), is still the seminal case regarding such a determination. In *Kokoszka*, the Second Circuit stated that in determining whether to deny a discharge for violation of an Order, the bankruptcy court should weigh the detriment to the proceedings and the dignity of the Court against the potential harm to the debtor if discharge is denied. *Kokoszka* at 997–98.

In this case the affront to these proceedings and to the Court is excessive. The debtors ignored their duties imposed by the Court as well as those imposed by the Bankruptcy Code and Rules. They failed to appear and failed to produce those records by which the Court and creditors may determine not only the debtors' assets, but the propriety of maintaining a bankruptcy

proceeding. The violation of Orders is repeated and continuing.

Most importantly, the violations go to the heart of a debtor's obligations under the Bankruptcy Code. In exchange for the tremendous relief afforded debtors under the Bankruptcy Code, debtors must fulfil their obligations by being candid with the Court and disclosing all of their assets, debts and financial transactions. By failing to obey the Orders of Court the debtors are refusing to fulfil this basic obligation.

In contrast, there is little harm to the debtors if they receive no discharge in bankruptcy. According to the petition, their pre-petition debts are in fact quite small. The evidence showed that the majority of the debt was for the 1991 Mazda Miata which was later surrendered to the creditor. The Robsons' total debt is less than $8,000. The only debts of any substance were for Goodyear ($1,900), the LRAFB Credit Union ($2,260), and the Wages ($4,000). From the timing of the petition and the schedules appended to the petition, it appears that the primary motivation for filing the bankruptcy was to discharge the Wages' debt. Since there are few debts, and the primary debt for which bankruptcy was filed has been determined to be nondischargeable, there is little prejudice in denying a discharge to these debtors.

### Withholding Information

■ The debtors have knowingly and fraudulently, in or in connection with the case, withheld from the Court recorded information specifically requested of them, relating to the debtors' property or financial affairs, 11 U.S.C. § 727(a)(4)(D), by failing to appear with books and records as directed in Court Orders and by fleeing the district with the books and records.

■ The Court, creditors, and "an officer of the estate," are entitled to examine all of the books and records of the debtor. A knowing and fraudulent failure to turn over such documents is grounds for denial of discharge. 11 U.S.C. § 727(a)(4)(D). The Trustee and the creditors are entitled to honest and accurate information "show-

ing what property passed through the debtor's hands during the period prior to his bankruptcy." *In re Dreyer,* 127 B.R. 587, 594 (Bankr.N.D.Tex.1991). All books and records which are material to an understanding of the debtor's financial condition and transactions are within the scope of section 727(a)(4)(D). *Wortman v. Ridley,* 115 B.R. 731, 737 (Bankr.D.Mass.1990). The failure to comply with their affirmative duty to cooperate by opening all records for inspection is grounds for denial of discharge. *In re Dreyer,* 127 B.R. 587, 595 (Bankr.N.D.Tex.1991).

In the instant case, the Court issued an Order directing the debtors to provide particular documents and financial records. To date they have failed to provide the ordered documents. In addition, despite obtaining an Order under Rule 2005, the trustee had been unable to examine the debtors due to the fact that they have fled from this district.

The debtors have offered no explanation for their failure to turn over documents. Indeed, rather than appear before the Court, the trustee, or their pre- and post-petition creditors, the debtors fled from the jurisdiction. These facts demonstrate that the debtors' failure to provide documents is deliberate and fraudulent such that the debtors' discharge will be denied pursuant to section 727(a)(4)(D).

### Removing Property of the Estate

■ The debtors, with the intent to hinder, delay, or defraud a creditor have removed property of the estate after the date of the filing of the petition by removing all of their property, including that held by them on the date of the filing of the petition in bankruptcy, from this district by fleeing with the property without advising the Court or officer of the Court of the location of the property of the estate. 11 U.S.C. § 727(a)(2)(B). From the evidence at trial, it is clear that the debtors had property which they failed to list on their schedules. Omission of these assets from the schedules is indicative of knowing and fraudulent conduct in concealing assets.

*In re Krich,* 97 B.R. 919, 923 (Bankr. N.D.Ill.1988).

### False Oath

 The evidence at trial was overwhelming that the debtors knowingly and fraudulently made a false oath on their petition. 11 U.S.C. § 727(a)(4)(A). They failed to list a vehicle which they have had, at all relevant periods, in their possession. They failed to list items of household property which they had in their possession. They failed to completely and accurately list their residences in the two years prior to the filing of the bankruptcy petition. Indeed, one of the addresses listed was fraudulent in that it did not even exist.

### Concealing Recorded Information

The debtors have concealed recorded information from which the debtors' financial condition or business transactions might be ascertained by failing to appear with the books and records as directed together with the act of fleeing the jurisdiction of the Court with their records. 11 U.S.C. § 727(a)(3).

### CONCLUSION

The purpose of the Bankruptcy Code is to permit insolvent debtors to reorder their affairs and make peace with their creditors. This relief is limited, however, to the honest debtor. From the history of this case and the evidence heard at the various hearings, it is clear that these are neither unfortunate nor honest debtors. Thomas and Carolyn Robson are thieves who are not entitled to any of the protection of this Court.

**ORDERED** that debtors' discharge is denied.

**ORDERED** that the Clerk of the Bankruptcy Court is directed to transmit this decision, the transcript and all exhibits of the proceeding held in this matter on March 9, 1993, and all papers contained in the debtors' main case file to the U.S. At-torney for the Eastern District of Arkansas.

**IT IS SO ORDERED.**