**In re Martin Todd MARPLES, dba Marples Home Construction, Debtor.**

No. 01–00221.

United States Bankruptcy Court, D. Idaho.

Aug. 10, 2001.

Stephen W. French, Boise, Idaho, for debtor.

Kimbell D. Gourley, Derrick O'Neill, Jones, Gledhill, Hess, Andrews, Fuhrman, Bradbury & Eiden, P.A., Boise, Idaho, for trustee Richard E. Crawforth.

## MEMORANDUM OF DECISION

TERRY MYERS, Bankruptcy Judge.

### INTRODUCTION

This matter comes before the Court upon the request of Chapter 7 trustee, Richard E. Crawforth ("Trustee"), to approve a proposed compromise of a dispute with the Debtor, Todd Marples ("Debtor"). *See* Fed.R.Bankr.P. 9019. The proposal was properly noticed out to all creditors and parties in interest. Fed.R.Bankr.P. 2002(a)(3). No parties objected nor did any appear at the hearing which was held August 1, 2001 to consider the request. The Trustee and Debtor have, in their submissions and oral argument, urged the Court to find the compromise to be reasonable and to enter an Order approving it. For the reasons set forth below, the Court declines to do so.

### BACKGROUND AND FACTS

The underlying facts are essentially uncontested and rather easily summarized. Debtor filed his chapter 7 petition for relief mid-day on January 30, 2001. Three or four hours later, Debtor was notified by his employer, Stein Distribution, Inc. ("Stein") that he had won a "sales contest" sponsored by Anheuser Busch, and that his prize was a new, 2001 Ford Mustang GT. Stein is a distributor of Anheuser Busch products in the southwest Idaho area.

Anheuser Busch sponsored the contest through approximately 25 "sales directors" who manage sales "regions" throughout the United States. Idaho (and, thus, Stein) is located in a region managed by a sales director located in Salt Lake City. Apparently each sales director was provid-

ed an automobile to award in each quarter of calendar year 2000.

In order to participate in the contest, individuals such as Debtor had to qualify by meeting their sales quotas for their employer/distributor. Additionally, in order for its employees to participate, each local distributor, including Stein, itself had to qualify by meeting certain quotas for the distributorship as a whole.

Debtor was selected as the fourth quarter 2000, regional winner of the contest. Though not expressly stated, it appears the "selection" was the result of a random drawing from a pool composed of all individuals who both qualified personally and whose employing distributorships qualified. That is to say, Debtor was not "selected" by reference to his individual performance vis a vis other individuals, within Stein or within the region, or on any other merit criteria.

Debtor's selection and the award of the prize occurred prior to the filing of his petition. While Stein was informed of that fact prior to the petition, Debtor received word only after filing.

The parties have further agreed that the Trustee will sell the 2001 Ford Mustang GT.[1] Debtor's amended schedule B lists a value of $22,000 for the car. The Trustee asserts that the Mustang's value ranges between $15,000.00 and $22,000.00.[2]

The Trustee's proposed compromise provides that, after the sale presently scheduled for August 23, the estate will retain 25% of the value of the vehicle and be responsible for taxes on that portion. The balance of the proceeds of sale will be delivered to Debtor.

The genesis of this division of proceeds, and the Trustee's compromise, is the existence of an exemption asserted by Debtor under Idaho Code § 11–207(1), which provides:

> **Restriction on garnishment—Maximum.**—(1) Except as provided in subsection (2) of this section, the maximum amount of the aggregate disposable earnings of an individual for any work week which is subjected to garnishment shall not exceed (a) twenty-five per cent (25%) of his disposable earnings for that week, or (b) the amount by which his disposable earnings for that week exceed thirty (30) times the federal minimum hourly wage prescribed by 29 U.S.C.A. 206(a)(1) in effect at the time the earnings are payable, whichever is less. In the case of earnings for any pay period other than a week, the Idaho commissioner of labor shall by regula-

---

1. It is the Court's understanding that this agreement is not contingent upon approval of the compromise.

2. This estimate appears in the Trustee's Motion to Approve Compromise filed on July 9. However, in a Notice of [Public Auction] Sale filed July 19, the Trustee asserts the appraised value of the vehicle is $14,500.00 to $15,000.00 based on the auctioneer's estimate. The Court approaches this revised value with some cynicism. Automobile values and prices are a prime example of information democratized by the Internet. Even a cursory review of Internet sites gives one reason to wonder if the value isn't higher than $15,000. For example, www.carsmart.com identifies the invoice price on a 2001 Mustang GT at $20,977 and MSRP at $22,730. Another site, www.vehix.com, lists invoice prices ranging from $20,977 to $24,127 (depending on trim, i.e., "deluxe", "premium" or "Bullitt") with related MSRP from $22,730 to $26,230. These prices are for GT coupes; if the subject vehicle is a convertible, the invoice and MSRP amounts are higher. A properly advertised and conducted auction might generate an appropriate return for creditors. However, given the nature of this asset, the Trustee might consider an alternative form of marketing and/or sale if his auctioneer predicts recovering such a comparably low value.

tion prescribe a multiple of the federal minimum hourly wage equivalent in effect to that set forth in (b) of this subsection.

The statutory definitions applicable to this exemption are found in § 11–206, and the portion pertinent here provides:

**Definitions.**—For the purpose of § 11–207, Idaho Code, the term:

1. "Earnings" *means compensation paid or payable for personal services,* whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

2. "Disposable earnings" means that part of the earnings of any individual remaining after deduction from those earnings of any amounts required by law to be withheld.

Idaho Code § 11–206 (emphasis supplied).

The Trustee earlier objected to the claim of exemption Debtor asserted in the Mustang and its proceeds under this statute. The settlement here concedes the exemption as claimed. In return, the Trustee obtains Debtor's concession that the vehicle is property of the estate under § 541(a)(1).

The Court took the question of approval of compromise under advisement following the hearing, and here enters its findings and conclusions on the matter. Fed. R.Bankr.P. 9014, 7052.

## DISCUSSION AND DISPOSITION

■ Before addressing the compromise itself, the stage must be set by briefly discussing the exemption claim at issue.

Section 522(b) allows debtors to exempt property of the estate from administration by the trustee. Idaho has opted out of the federal exemption scheme of § 522. Idaho Code § 11–609. Idaho law therefore controls the validity of claimed exemptions, though this Court interprets and applies

the law in bankruptcy cases. *See, In re DeBoer,* 99.3 I.B.C.R. 101, 102 (Bankr.D.Idaho 1999). *Accord, Yaden v. Osworth (In re Osworth),* 234 B.R. 497, 498 (9th Cir. BAP 1999).

■ A claim of exemption will be valid unless a party in interest or the trustee timely objects, and that objector satisfies its burden of proving that the exemption is improperly claimed. Fed.R.Bankr.P. 4003(c). Further, as stated in *DeBoer:*

Exemptions are to be liberally construed in order to protect the debtor and his fresh start. Still, the statutory language cannot be "tortured" in the guise of liberal construction.

*Id.,* 99.3 I.B.C.R. at 102, citing *In re Collins,* 97.3 I.B.C.R. at 79.

The Court has had several occasions to consider the exemption provided by Idaho Code § 11–207(1). *See, In re Atkinson,* 258 B.R. 769, 01.1 I.B.C.R. 11 (Bankr.D.Idaho 2001); *DeBoer,* 99.3 I.B.C.R. 101; *In re Grewal,* 96.4 I.B.C.R. 146 (Bankr.D.Idaho 1996). Each of these cases arrives at a construction of the statute that gives effect to the exemption if factually it can be shown that the subject funds are generated by, and reflect compensation for, the "personal services" of the debtor, regardless of the nomenclature used to identify or characterize those funds. *See, Atkinson,* 258 B.R. at 773, 01.1 I.B.C.R. at 12–13; *DeBoer,* 99.3 I.B.C.R. at 103–05; *Grewal,* 96.4 I.B.C.R. at 146. Such an approach, this Court has determined, liberally and appropriately construes the plain language of the provision in order to protect a debtor's fresh start, while at the same time not torturing that language in order to provide a benefit not within the contemplation of the legislature.

It is with this predicate that the Court must consider the Trustee's election to

forgo his challenge to the claimed exemption.

■ Trustees are generally and properly given broad discretion in deciding how to perform the myriad duties imposed upon them by the Bankruptcy Code. Among these discretionary powers is the ability to negotiate settlements and compromises of disputes.

■ However, the Trustee is a representative of all the creditors of the estate. For that reason, his ability to settle and the bounds of his discretion are not limitless. Rule 9019(a) recognizes that the Court's approval of the proposed compromise or settlement is necessary and that such approval can occur only after notice has been provided to creditors and other parties in interest.

■ The standards which guide the Court in fulfilling its role in reviewing compromise proposals are well settled. *In re Lake City R.V., Inc.* 226 B.R. 241, 98.4 I.B.C.R. 104 (Bankr.D.Idaho 1998) held:

> The Court may approve a compromise only if it is "fair and equitable" and that determination must be supported by a sufficient factual foundation. *[Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377 (9th Cir.1986)]* at 1383.
>
> In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider:
>
> (a) The probability of success in the litigation;
>
> (b) the difficulties, if any, to be encountered in the matter of collection;
>
> (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;
>
> (d) the paramount interest of the creditors and a proper deference to

> their reasonable views in the premises. *In re Flight Transp. Corp. Secs. Litig.*, 730 F.2d 1128, 1135 (8th Cir. 1984) (citations omitted), cert. denied, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985).

*A & C,* 784 F.2d at 1381. This standard has been expressly recognized in this District. *In re Pintlar/In re Gulf USA Corp.*, 94 I.B.C.R. 76, 77 (Bankr.D.Idaho 1994). "The trustee, as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." *A & C,* 784 F.2d at 1381.

226 B.R. at 243–44; 98.4 I.B.C.R. at 105. *See also, In re Western Appliance, Inc.*, 96.1 I.B.C.R. 32, 33–34 (Bankr.D.Idaho 1996). *Accord, Martinson v. Michael (In re Michael)*, 183 B.R. 230, 233, 238–39 (Bankr.D.Mont.1995).

In evaluating the entirety of the record and the arguments of the parties, the Court concludes that the Trustee has failed to establish that the proposed compromise is fair, reasonable and adequate from the point of view of the estate and its creditors under the foregoing standards.

Certain of the *A & C* factors are easy to address. For example, the second factor—the difficulties if any to be encountered in collection—does not support compromise. The Mustang has by agreement of the parties been surrendered to the Trustee and will be sold. The parties are dealing solely with the division of proceeds of sale. This is not a situation where a judgment in favor of the estate is of suspect collectability.

Similarly, the third factor—the complexity of litigation and the expense, inconvenience or delay attending it—does not support compromise. The facts are uncontested and could be simply presented, as indeed they have been in connection

with the suggested compromise. The Court has difficulty envisioning that even an hour of trial time would be required to fully and adequately present any relevant facts not already aired and subject to the parties' agreement. There would be no delay in submitting the matter on the merits.[3]

█ The fourth factor—the paramount interest of the creditors and a proper deference to their reasonable views—is in one sense a little problematic here. Creditors have not expressed any views, reasonable or otherwise, in relation to this issue. Perhaps they are content to allow the Court to act as the "gatekeeper." Perhaps they are content with the Trustee's proposed resolution. Perhaps they understand little of what is at issue or transpiring. It is hard to credit the views of nonappearing creditors as being "reasonable" if one must also engage in supposition as to the very nature of those views in the first place. The deference required by this standard is best viewed as being owed to those creditors who express their views. Little if any "proper deference" need be given silence. Nevertheless, the Court readily acknowledges the absence of any objection by affected creditors, and has tried to take that into consideration.

█ There is a second aspect to this factor, however. The Court must also consider the "paramount interest" of the creditors. Generally, this interest reflects not only the desire of creditors to obtain the maximum possible recovery but also their competing desire that recovery occur in the least amount of time. This factor is thus interwoven with considerations of expense, delay, and risk. *Accord, Western Appliance,* 96.1 I.B.C.R. at 33 (one purpose of compromise is to allow the trustee and creditors to avoid burdens of litigating contested claims where the outcome is in doubt).

There is here presented an unsettled legal issue which the Trustee proposes to resolve by, in essence, conceding the propriety of Debtor's claim of exemption. While the result obtained is therefore certainly prompt, the Trustee gets only the minimum amount which would be recovered should he litigate and fully lose. The Court has not been persuaded that the paramount interest of creditors is served.

This leads to a consideration of the first factor of the *A & C* test—the probability of the Trustee's success in litigation.

In evaluating proposed compromises under this factor, the Court often is asked to recognize the vagaries that exist in litigation. For example, it is at times difficult for litigants to establish the necessary evidentiary record to support their contentions. Often litigants must cope with conflicting testimony and conflicting inferences which can be drawn from matters placed in evidence. Yet, here, the parties both appear to agree that the underlying factual situation is not subject to dispute and can be expeditiously presented.

Another aspect to be considered in evaluating the probability of success is the nature of the legal issue involved. This is an area which the Court must necessarily approach with caution because under Rule 9019 it is asked only to evaluate the proposed compromise and not render ruling on the underlying substantive legal issue (which here is the validity of the Debtor's claim of exemption).

However, this present compromise is for practical purposes a concession that Debt-

---

**3.** The Court would acknowledge that a delay could arise were the ruling on the objection to exemption to be appealed, and that an appeal would be possible given the winner-take-all nature of the dispute (*i.e.,* either the exemption is valid, or it is not).

or's claim is valid. There is little *quid pro quo* in the compromise. It appears that all Debtor concedes is (a) that the vehicle is property of the estate, and (b) that Debtor would be responsible for taxes on the portion of the proceeds which he retains as exempt. Neither fact appears to have been seriously contested by Debtor, and the Court has been provided nothing to indicate a credible issue exists on either point.

Is the probability of success on the objection to exemption here so lacking that the Court should bless a compromise by which the Trustee essentially capitulates? The Court simply cannot reach that conclusion.

The parties have presented no case law construing this or a similar exemption provision under facts similar to those existing here. In fact, the only precedent discussed by the parties are this Court's decisions in *DeBoer* and *Grewal*, with Debtor contending that these decisions can and should be read to support the claim of exemption.

Both decisions acknowledge that whatever a debtor earns by reason of his or her personal labors is entitled to the protection of the exemption statute regardless of the name ascribed to those earnings. In both cases, the issue concerned the treatment of

"accounts receivable" because that term is not specifically included in the statutory definition. Neither case addressed a claim of "compensation" as attenuated as the claim asserted here.

■ This exemption statute, of course, does not exist in a vacuum. It is part of the "garnishment" provisions of Idaho law,[4] and is designed to protect a portion of a debtor's recurring income (*i.e.*, the "disposable earnings") from the reach of garnishing creditors in order that the debtor and debtor's dependents can receive a living wage and provide for their necessities. What is at issue here is not "earnings" in the sense of something paid or payable to Debtor in direct correlation to the services or labor he performed. Rather, it is a windfall that, at best, is related to his labors in the sense that such labors helped establish the right to participate in the "lotto". In this respect, an argument can credibly be made that the Mustang is not "compensation paid or payable for personal services" under § 11–206, and is therefore not "earnings" subject to the per week or federal minimum hourly wage analyses under § 11–207(1). Therefore, notwithstanding the fact that exemption statutes are to be liberally construed, it can be argued that Debtor's construction goes too far.[5]

---

4. While the exemption arises in relation to the garnishment provisions, rather than in the levy and execution provisions of the Idaho Code, it is nevertheless recognized as available to bankruptcy debtors. *See DeBoer*, 99.3 I.B.C.R. at 102, n. 3.

5. The similarities between Idaho Code § 11–206(1) and 15 U.S.C. § 1673(a), and between Idaho Code § 11–207 and 15 U.S.C. § 1672, are striking. In the absence of controlling Idaho interpretations of its statute, the interpretation of the federal analogy would appear to be helpful and, perhaps, persuasive. *See, e.g., Wallerstedt v. Sosne (In re Wallerstedt)*, 930 F.2d 630, 632 (8th Cir.1991), and *In re*

*Ballard*, 238 B.R. 610, 644–47 (Bankr. M.D.La.1999) (both taking this approach to similar state garnishment provisions).

Among the interpretations which might apply to the case at hand is that of *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). There, in the process of dealing with issues concerning exemptions under the Bankruptcy Act, the Supreme Court made several observations about the § 1673 exemption, noting that "earnings" as there used were "limited to 'periodic payments of compensation and (do) not pertain to every asset that is traceable in some way to such compensation.'" 417 U.S. at 651, 94 S.Ct. 2431, quoting from the opinion of the Court

By the terms of the proposed compromise, the Trustee gains nothing for the estate in consideration of the fact that there is another view which can legitimately be advanced. Rather, the Trustee's "compromise" is tantamount to surrender. Whatever arguments can be made as to the probability of complete success on the merits, the Court concludes that an inadequate record has been presented by the Trustee to establish that there is no possibility of success on the merits, and that's the showing which must be made to justify the sort of agreement here proffered.

## CONCLUSION

Based upon the foregoing, the Court concludes that the Trustee has failed to meet the burden of showing the compromise to be fair and equitable under the *Lake City/A & C* standards. Therefore, the Trustee's motion for approval of compromise will be denied. A separate Order will be entered.

of Appeals in that case, 479 F.2d 990, 997 (2d Cir.1973). The Court found the purpose in enacting the statute was "to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis." *Id. See also, Usery v. First National Bank of Arizona,* 586 F.2d 107, 110 (9th Cir.1978) (relying on *Kok-oszka* in evaluating whether a bank account had "an element of periodicity [or] the critical relationship to a person's subsistence that a paycheck does").

These brief citations and observations are not meant to resolve the exemption issue, but merely to highlight the problems with a settlement that ascribes no value whatsoever to the Trustee's objection.